12-CV-1025 (AMD)(PK)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Kareem Bellamy,

Plaintiff,

-against-

City of New York,
John J. Gillen,
Michael F. Solomeno,
John Doe 1 and John Doe 2, Supervising Officers at the NYPD 101st Precinct,

Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

***ZACHARY W. CARTER***
*Corporation Counsel of the City of New York*
*Attorney for Defendants City of New York, John Gillen and Michael Solomeno*
*100 Church Street*
*New York, New York 10007*

*Of Counsel: Matthew J. Modafferi*
*Tel: (212) 356-2331*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 1

STATEMENT OF FACTS .......... 2

STANDARD FOR SUMMARY JUDGMENT .......... 2

ARGUMENT

POINT I

PLAINTIFF CANNOT ESTABLISH A MALICIOUS PROSECUTION CLAIM .......... 3

A. The identifications of Plaintiff coupled with the statements made by Andrew Carter and Linda Sanchez established probable cause to prosecute.......... 4

B. Plaintiff cannot rebut the presumption of probable cause created by the Grand Jury's Indictment.......... 7

C. Plaintiff cannot establish a favorable termination of the criminal charges.......... 9

POINT II

DEFENDANTS GILLEN AND SOLOMENO ARE ENTITLED TO THE DEFENSE OF QUALIFIED IMMUNITY .......... 11

POINT III

PLAINTIFF CANNOT SHOW THAT ANY ALLEGED FABRICATION OF EVIDENCE BY DEFENDANTS GILLEN OR SOLOMENO CAUSED HIM TO SUFFER INJURY AND HIS FAIR TRIAL CLAIM MUST, THEREFORE, FAIL .......... 13

**Page**

POINT IV

PLAINTIFF'S FOURTEENTH AMENDEMENT DUE PROCESS CLAIM IS DUPLICATIVE AND MUST BE DISMISSED ....................18

POINT V

ANY CLAIMS AGAINST THE JOHN DOE DEFENDANTS ARE TIME-BARRED AND MUST BE DISMISSED ....................19

POINT VI

PLAINTIFF CANNOT ESTABLISH A CLAIM AGAINST THE CITY OF NEW YORK ....................20

A. The Monell claims fail as a matter of law……………………..21

B. Plaintiff's alleged improper summation theory of liability fails....................22

C. Plaintiff's alleged failure to provide impeachment material theory of liability fails…....................26

POINT VII

PLAINTIFF'S INFLICTION OF EMOTIONAL DISTRESS CLAIMS FAIL ....................27

CONCLUSION.................... 30

**Page**

## TABLE OF AUTHORITIES

**Cases**

Adams v. Artus,
09-CV-1941 (SLT)(VVP),
2012 U.S. Dist. LEXIS 45660 (E.D.N.Y. Feb. 24, 2012),
aff'd 2012 U.S. Dist. LEXIS 45656 (E.D.N.Y., Mar. 29, 2012) .......... 24

Albright v. Oliver,
510 U.S. 266 (1994) .......... 18

Allen v. McCurry,
449 U.S. 90 (1980) .......... 6-7

Alvarado v. City of New York,
453 Fed. App'x. 56 (2d Cir. 2011) .......... 5

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1996) .......... 3

Anderson v. Wilson,
No. 91-2954,
1992 U.S. App. LEXIS 19245 (7th Cir. Aug. 10, 1992) .......... 23

Ashcroft v. Iqbal,
556 U.S. 662 (2009) .......... 22

Baker v. McCollan,
443 U.S. 137 (1979) .......... 18

Bender v. City of New York,
78 F.3d 787 (2d Cir. 1996) .......... 28

Bernshtein v. City of New York,
496 Fed. App'x. 140 (2d Cir. 2012) .......... 4

Bouche v. City of Mount Vernon,
11 Civ. 5246 (SAS),
2012 U.S. Dist. LEXIS 40246 (S.D.N.Y. Mar. 23, 2012) .......... 19

Boyd v. City of New York,
336 F.3d 72 (2d Cir. 2003) .......... 11

**Page**

Bryant v. City of New York,
404 F.3d 128 (2d Cir. 2005)........................................................................................18

Buckley v. Fitzsimmons,
20 F.3d 789 (7th Cir. 1994)........................................................................................17

Cantalino v. Danner,
96 N.Y.2d 391 (2001)..................................................................................................9

Caravalho v. City of New York,
13-cv-4174 (PKC)(MHD),
2016 U.S. Dist. LEXIS 44280 (S.D.N.Y. Mar. 31, 2016)..........................................28

Celotex Corp. v. Catrett,
477 U.S. 317 (1986)....................................................................................................2

City of Los Angeles v. Heller,
475 U.S. 796 (1986)....................................................................................................20

Conboy v. AT&T Corp.,
241 F.3d 242 (2d Cir. 2001)........................................................................................2

Conte v. County of Nassau,
No. 06-CV-4746 (JFB)(ETB),
2008 U.S. Dist. LEXIS 25694 (E.D.N.Y. Mar. 31, 2008)..........................................18

Dettelis v. Cnty. of Cattaraugus,
14-CV-1096A(Sr),
2016 U.S. Dist. LEXIS 57459 (W.D.N.Y. Mar. 31, 2016).........................................22

DiSimone v. Phillips,
461 F.3d 181 (2d Cir. 2006)........................................................................................13

Donahue v. Gavin,
280 F.3d 371 (3d Cir. 2002)........................................................................................9

Eastman Kodak Co. v. Image Technical Servs., Inc.,
504 U.S. 451 (1992)....................................................................................................2

Fappiano v. City of New York,
07-CV-2476 (SLT)(SMG),
2014 U.S. Dist. LEXIS 179584 (E.D.N.Y. Jan. 7, 2015)..........................................17

**Page**

Fappiano v. City of New York,
2016 U.S. App. LEXIS 4210 (2d Cir. Mar. 7, 2016) ........ 13, 14

Fischer v. Maloney,
43 N.Y.2d 553 (1978) ........ 27

Fuchsberg & Fuchsberg v. Galizia,
300 F.3d 105 (2d Cir. 2002) ........ 7

Gallo v. Prudential Residential Servs., Ltd. Partnership,
22 F.3d 1219 (2d Cir. 1994) ........ 3

Garofolo v. Coomb,
804 F.2d 201 (2d Cir. 1986) ........ 25

Gaston v. City of New York,
851 F. Supp. 2d 780 (S.D.N.Y. 2012) ........ 5, 12

Graham v. Connor,
490 U.S. 386 (1989) ........ 18

Green v. Leibowitz,
118 A.D.2d 756 (2d Dep't 1986) ........ 29

Harlow v. Fitzgerald,
457 U.S. 800 (1992) ........ 11

Hazan v. City of New York,
98 Civ. 1716 (LAP),
1999 U.S. Dist. LEXIS 10499 (S.D.N.Y. July 12, 1999) ........ 29

Imbler v. Pachtman,
424 U.S. 409 (1976) ........ 21

Jean-Louis v. Am. Airlines,
08-CV-03898 (FB)(SMG),
2010 U.S. Dist. LEXIS 77292 (E.D.N.Y. July 30, 2010) ........ 28

Jeffes v. Barnes,
208 F.3d 49 (2d Cir. 2000) ........ 20

Jocks v. Tavernier,
316 F.3d 128 (2d Cir. 2003) ........ 13

**Page**

Johnson v. City of Aurora,
No. 95 C 6441,
1997 U.S. Dist. LEXIS 17065 (Ill. N.D. Oct. 27, 1997)........................................................ 23

Johnson v. Constantellis,
221 Fed. App'x 48 (2d Cir. 2007)........................................................................................ 4

Johnson v. Jamaica Hosp.,
62 N.Y.2d 523 (1984) ........................................................................................................ 29

Johnson v. Watkins,
101 F.3d 792 (2d Cir. 1996)................................................................................................ 6

Jones v. City of New York,
No. 12-CV-3658 (JG),
2013 U.S. Dist. LEXIS 162235 (E.D.N.Y. Nov.14, 2013),
vacated on other grounds, 603 Fed. App'x. 13 (2d Cir. Mar. 4, 2015).................................. 16

Keith v. City of New York,
No. 14-4788-cv,
2016 U.S. App. LEXIS 4208 (2d. Cir. Mar. 7, 2016).......................................................... 13

Kennedy v. McKesson Co.,
58 N.Y.2d 500 (1983) ........................................................................................................ 29

Kentucky v. Graham,
473 U.S. 159 (1985)........................................................................................................... 20

King v. Kohlmeier,
2012 U.S. Dist. LEXIS 139372 (C.D. Ill. Sept. 27, 2012)..................................................... 23

Kinzer v. Jackson,
316 F.3d 139 (2d Cir. 2003)................................................................................................ 4

Kraft v. City of New York,
696 F. Supp. 2d 403 (S.D.N.Y. 2010)................................................................................. 29

Leka v. Portuondo,
257 F.3d 89 (2d Cir. 2001)................................................................................................. 14

Lewis v. City of New York,
12 Civ. 2836 (RRM)(RML),
2013 U.S. Dist. LEXIS 180202 (E.D.N.Y. Dec. 24, 2013),
aff'd, 591 F. App'x 21 (2d Cir. 2015).................................................................................. 19

**Page**

Lucky v. City of New York,
No. 03-CV-1983,
2004 U.S. Dist. LEXIS 18672 (S.D.N.Y. Sept. 20, 2004)........................................................ 6

Maliha v. Faluotico,
286 F. App'x 742 (2d Cir. 2008) ......................................................................................... 18

Malley v. Briggs,
475 U.S. 335 (1986)............................................................................................................. 11

Manganiello v. City of New York,
612 F.3d 149 (2d Cir. 2010).............................................................................................. 4, 8

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
475 U.S. 574 (1986)............................................................................................................... 2

May v. Hoke,
711 F. Supp. 703 (E.D.N.Y. 1988),
aff'd, 875 F.2d 857 (2d Cir. 1989)....................................................................................... 17

McCaffrey v. City of New York,
11 Civ. 1636 (RJS),
2013 U.S. Dist. LEXIS 18815 (S.D.N.Y. Feb. 7, 2013)........................................................ 13

McClellan v. Smith,
439 F.3d 137 (2d Cir. 2006).................................................................................................. 8

Mitchell v. City of Albany,
08-CV-871,
2010 U.S. Dist. LEXIS 31426 (N.D.N.Y. Mar. 31, 2010).................................................. 9, 10

Mitchell v. Forsyth,
472 U.S. 511 (1985)............................................................................................................. 11

Monaco v. Hogan,
98-CV-3386 (NGG)(RML),
2016 U.S. Dist. LEXIS 44724 (E.D.N.Y. Mar. 31, 2016)...................................................... 23

Monell v. Department of Social Servs.,
436 U.S. 658 (1978)............................................................................................................. 20

Morgan v. Nassau Cnty.,
No. 03-CV-5109,
2009 U.S. Dist. LEXIS 79180 (E.D.N.Y. Sept. 2, 2009)......................................................... 4

**Page**

Mortise v. United States,
102 F.3d 693 (2d Cir. 1996)............................................................................................ 29

Murphy v. Lynn,
118 F.3d 938 (2d Cir. 1997)............................................................................................ 19

Nnodimele v. Derienzo,
13-CV-3461 (ARR)(RLM),
2016 U.S. Dist. LEXIS 9881 (E.D.N.Y. 2016)................................................................. 8

O'Brien v. City of Yonkers,
07-CV-3974 (KMK),
2013 U.S. Dist. LEXIS 43551 (S.D.N.Y. Mar. 22, 2013) ............................................... 12

O'Neill v. Town of Babylon,
986 F.2d 646 (2d Cir. 1993)............................................................................................ 11

Pearl v. City of Long Beach,
296 F.3d 76 (2d Cir. 2002).............................................................................................. 19

People v. Bellamy,
872 N.Y.S.2d 692,
2008 N.Y. Misc. LEXIS 4672 (N.Y. Sup. Ct. 2008) ................................................ 1, 15, 16, 27

People v. Bellamy,
906 N.Y.S.2d 781,
2010 N.Y. Misc. LEXIS 47 (N.Y. Sup. Ct. 2010) ............................................................ 1

People v Feingold,
7 N.Y.3d 288 (2006) ................................................................................................... 1, 10

People v Payne,
3 N.Y.3d 266 (2004) ................................................................................................... 1, 10

People v. Shilitano,
218 N.Y. 161 (1916) ...................................................................................................... 16

Phelan v. Sullivan,
541 Fed. App'x. 21 (2d Cir. 2013)..................................................................................... 7

Pinkney v. Keane,
920 F.2d 1090 (2d Cir. 1990),
cert. denied, 111 S. Ct. 2824 (1991) .............................................................................. 22

**Page**

Rasmussen v. City of New York,
766 F. Supp. 2d 399 (E.D.N.Y. 2011) ........................................................................ 27

Ricciuti v. New York City Transit Authority,
124 F.3d 123 (2d Cir. 1997)........................................................................................ 13

Robinson v. Rome,
11-CV-1411(NGG)(LB),
2011 U.S. Dist. LEXIS 43784 (E.D.N.Y. Apr. 20, 2011) .......................................... 21

Rodriguez v. State of New York,
No. 95-CV-3639,
1996 U.S. Dist. LEXIS 5353 (S.D.N.Y. Apr. 23, 1996).............................................. 5

Rohman v. New York City Transit Auth.,
215 F.3d 208 (2d Cir. 2000).......................................................................................... 3

Rothstein v. Carriere,
373 F.3d 275 (2d Cir. 2004)............................................................................ 3, 8, 9, 10

Rounseville v. Zahl,
13 F.3d 625 (2d Cir. 1994)............................................................................................ 4

Rueda v. Kreth,
No. 01-CV-2819,
2005 U.S. Dist. LEXIS 4404 (E.D.N.Y. Feb. 7, 2005)............................................... 11

Saucier v. Katz,
533 U.S. 194 (2001)..................................................................................................... 11

Savino v. City of New York,
331 F.3d 63 (2d Cir. 2003)........................................................................................ 3, 7

Scotto v. Almenas,
143 F.3d 105 (2d Cir. 1998).......................................................................................... 3

Shmueli v. City of New York,
424 F.3d 231 (2d Cir. 2005)........................................................................................ 22

Singer v. Fulton County Sheriff,
63 F.3d 110 (2d Cir. 1995).......................................................................................... 12

Smith-Hunter v. Harvey,
95 N.Y.2d 191 (2000) .................................................................................................... 9

**Page**

Stampf v. Long Island R.R. Auth.,
07-CV-3349 (SMG),
2010 U.S. Dist. LEXIS 58551 (E.D.N.Y. June 14, 2010) ........ 28

Strickler v. Greene,
527 U.S. 263 (1999) ........ 26

Tapia-Ortiz v. Doe,
171 F.3d 150 (2d Cir. 1999) ........ 19

Thomsen v. City of New York,
15cv2668 (DLC),
2016 U.S. Dist. LEXIS 17079 (S.D.N.Y. Feb. 11, 2016) ........ 29

Ullah v. Office of the Dist. Attorney,
No. 07-CV-2687,
2009 U.S. Dist. LEXIS 61607 (S.D.N.Y. July 20, 2009) ........ 11

United States v. Feliciano,
223 F.3d 102 (2d Cir. 2000) ........ 24

United States v. Mapp,
170 F.3d 328 (2d Cir. 1999) ........ 24, 25

United States v. Thai,
29 F.3d 785 (2d Cir. 1994) ........ 24

Van de Kamp v. Goldstein,
555 U.S. 335 (2009) ........ 21

Vanderwoude v. City of New York,
12 Civ. 9046 (KPF),
2014 U.S. Dist. LEXIS 79064 (S.D.N.Y. Jun. 10, 2014) ........ 5

Vassallo v. Lando,
591 F. Supp. 2d 172 (E.D.N.Y. 2008) ........ 20

Walker v. City of New York,
974 F.2d 293 (2d Cir. 1992) ........ 21, 22

Williams v. City of New York,
No. 10-CV-2676,
2012 U.S. Dist. LEXIS 19207 (E.D.N.Y. Feb. 15, 2012) ........ 5-6

**Page**

Wray v. City of New York,
490 F.3d 189 (2d Cir. 2007)........ 20

Ying Jing Gan v. City of New York,
996 F.2d 522 (2d Cir. 1993)........ 3

Zahrey v. Coffey,
221 F.3d 342 (2d Cir. 2000)........ 17

**Statutes**

N.Y. C.P.L.R. § 214........ 19

Fed. R. Civ. P. 56........ 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- x

Kareem Bellamy,

Plaintiff,

-against-

City of New York,
John J. Gillen,
Michael F. Solomeno,
John Doe 1 and John Doe 2, Supervising Officers at the NYPD 101st Precinct,

Defendants.

---------------------------------------------------------------------- x

**DEFENDANTS CITY OF NEW YORK, JOHN GILLEN AND MICHAEL SOLOMENO'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

12-CV-1025 (AMD)(PK)

## PRELIMINARY STATEMENT

A jury found Plaintiff guilty of depraved indifference murder in the second degree, the conviction was affirmed, his appeal was denied by the Court of Appeals, and habeas corpus relief was denied. People v. Bellamy, 872 N.Y.S.2d 692, 2008 N.Y. Misc. LEXIS 4672, at *3-5 (N.Y. Sup. Ct. 2008) (citations omitted). Plaintiff successfully convinced a State Court Judge to grant him a new trial based on a fabricated audio tape made by a local criminal, Michael Green, who was paid thousands of dollars by Plaintiff's criminal defense attorney and counsel in this civil matter. People v. Bellamy, 906 N.Y.S.2d 781, 2010 N.Y. Misc. LEXIS 47, at *2-5 (N.Y. Sup. Ct. 2010). As a result, the District Attorney's Office could no longer sustain a conviction because of a change in the penal law regarding the definition of depraved indifference murder. See People v Payne, 3 N.Y.3d 266 (2004); People v Feingold, 7 N.Y.3d 288 (2006).

Thereafter, this lawsuit was filed and the plot to manipulate the justice system continued. Plaintiff sued Defendants City of New York, John Gillen and Michael Solomeno alleging claims for malicious prosecution (Claims II and IX), denial of a right to a fair trial

(Claim I), Fourteenth Amendment due process (Claim III), failure to intercede and supervisory liability against John Does (Claims IV and V), municipal liability (Claims VI through VIII) and infliction of emotional distress (Claims X and XI). See Exhibit B. Plaintiff's claims are ripe for summary judgment for the reasons set forth herein.

## STATEMENT OF FACTS

For a complete statement of facts, the Court is respectfully referred to Defendants' Local Civil Rule 56.1 Statement of Undisputed Material Facts, dated May 13, 2016, ("Defendants' 56.1 St."), submitted herewith.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is warranted when, viewing the evidence in a light most favorable to the non-movant, the Court determines that there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56; Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 457 (1992).

A motion for summary judgment requires the party with the burden of proof at trial to come forward with proper evidence and "make a showing sufficient to establish the existence of [each] element to that party's case … since a complete failure of proof concerning an essential element of … [the] case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is 'no genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The Second Circuit stated:

> [T]he moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is

> so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.

Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1223-24 (2d Cir. 1994) (citations omitted). The non-moving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998) (citations omitted). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1996) (emphasis added).

## ARGUMENT

### POINT I

### PLAINTIFF CANNOT ESTABLISH A MALICIOUS PROSECUTION CLAIM

A claim for malicious prosecution pursuant to New York law, requires a showing that: (1) The defendant initiated a criminal proceeding; (2) that was terminated favorably to the plaintiff; (3) there was no probable cause for the criminal charge; and (4) the defendant acted maliciously. Rothstein v. Carriere, 373 F.3d 275, 282 (2d Cir. 2004) (citing Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003)). To allege a cause of action for malicious prosecution under § 1983, a plaintiff must allege, "in addition to the elements of malicious prosecution under state law, that there was a [ ] sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." Rohman v. New York City Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000). New York law "places a heavy burden on malicious prosecution plaintiffs" and it is their burden of proving "there was no probable cause for the criminal charge." Rothstein, 373 F.3d at 282. Plaintiff simply cannot meet his burden.

**A. The identifications of Plaintiff coupled with the reports made by Andrew Carter and Linda Sanchez established probable cause to prosecute**

"[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." Manganiello v. City of New York, 612 F.3d 149, 161-62 (2d Cir. 2011). "In the context of a malicious prosecution claim, probable cause under New York law is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." Bernshtein v. City of New York, 496 Fed. App'x. 140, 142 (2d Cir. 2012) (quoting Rounseville v. Zahl, 13 F.3d 625, 629 (2d Cir. 1994). Therefore, "the existence, or lack, of probable cause is measured as of the time the judicial proceeding is commenced (e.g., the time of the arraignment), not the time of the … arrest." Morgan v. Nassau County, No. 03-CV-5109, 2009 U.S. Dist. LEXIS 79180, at *32 (E.D.N.Y. Sept. 2, 2009) (citation omitted). "If probable cause existed at the time of arrest, it continues to exist at the time of prosecution unless undermined 'by the discovery of some intervening fact.'" Johnson v. Constantellis, 221 Fed. App'x 48, 50 (2d Cir. 2007) (quoting Kinzer v. Jackson, 316 F.3d 139, 144 (2d Cir. 2003)).

Prior to the commencement of the prosecution, Defendants Gillen and Solomeno were informed by Andrew Carter that he witnessed the murder and all three men involved (the two assailants and the victim) walked from the C-Town supermarket to the corner of Beach Channel Drive and Beach 48th Street, where the murder occurred. See Defendants' 56.1 St., ¶¶ 6-9. Linda Sanchez informed the detectives that the victim was on her cashier's line and two males were behind him. Id. at ¶¶ 12-14. These two males exited the store and waited in the parking lot for the victim to leave shortly before the murder. Id. at ¶¶ 15, 16. A few weeks later, Ms. Sanchez called the precinct and stated that the person she saw immediately prior to the stabbing was in front of 5132 Beach Channel Drive, drinking a 40 ounce beer. Id. at ¶¶ 30, 31.

Plaintiff, who admittedly was drinking a 40 ounce beer at the time he was picked up by detectives, told the police that he had observed the victim's body in the street and that he was in the C-Town store that on the day of the murder. See Defendants' 56.1 St., ¶¶ 31, 33, 40-41.

Ms. Sanchez identified Plaintiff in a line-up as the person she observed leaving the C-Town supermarket with a second unidentified male and walking in the same direction as the victim right before the murder. Id. at ¶¶ 46, 49. Ms. Sanchez signed a line-up report memorializing her identification. Id. at ¶ 50. Mr. Carter viewed the line-up and stated he was 99% sure it was Plaintiff, but the stabber had a different hairstyle during the incident than he did for the line-up. Id. at ¶¶ 51, 53-54. Mr. Carter then informed ADA Antignani that he was positive that the person who stabbed James Abbott was Plaintiff. See Defendants' 56.1 St., ¶ 57.

An identification of the suspect by a victim or eyewitness can constitute, by itself, probable cause to prosecute. See Rodriguez v. State of New York, No. 95-CV-3639, 1996 U.S. Dist. LEXIS 5353, at *8 (S.D.N.Y. Apr. 23, 1996) ("the identification of an individual as the perpetrator of a crime by a putative victim of, or eyewitness to, the crime is in itself sufficient to establish probable cause, as long as it is reasonable to believe that the putative victim or eyewitness is telling the truth"). Courts have found sufficient probable cause for prosecution where one or more eyewitnesses identified the perpetrator. See, e.g., Alvarado v. City of New York, 453 Fed. App'x. 56, 58 (2d Cir. 2011) (concluding that identification of plaintiff in photo array and lineup established probable cause); Vanderwoude v. City of New York, 12 Civ. 9046 (KPF), 2014 U.S. Dist. LEXIS 79064, at *49 (S.D.N.Y. Jun. 10, 2014) (finding probable cause to prosecute where the plaintiff had been identified in two separate lineups by two separate individuals); Gaston v. City of New York, 851 F. Supp. 2d 780, 788 (S.D.N.Y. 2012) (victim's identification of attacker in photo array and line-up established probable cause); Williams v. City

of New York, No. 10-CV-2676, 2012 U.S. Dist. LEXIS 19207, at *21 (E.D.N.Y. Feb. 15, 2012) (finding probable cause to arrest and prosecute based on at least one witness's identification of plaintiff in lineup); Lucky v. City of New York, No. 03-CV-1983, 2004 U.S. Dist. LEXIS 18672, at *15-16 (S.D.N.Y. Sept. 20, 2004) (noting that victim's identification of plaintiff as his attacker in a lineup established probable cause to prosecute).

Plaintiff must demonstrate by a preponderance of the evidence that probable cause did not exist in order to meet his burden for malicious prosecution. In light of Carter and Sanchez's reports and the line-up identifications, Plaintiff simply cannot meet his burden to show the absence of probable cause. In fact, on September 30, 1994 after a Wade/Huntley hearing, the late Honorable Supreme Court Justice Steven Fisher ruled that the police had probable cause based on the following: Ms. Sanchez's statements, her phone call to the police informing them that one of the two males from the C-Town was located, and the probability that the two males from the store were the same two males that Mr. Carter observed commit the murder. See Defendants' 56.1 St., ¶¶ 81, 83. Those are precisely the facts before this Court. Accordingly, Plaintiff cannot meet his burden.

To the extent Plaintiff argues the line-up was suggestive, he is estopped from re-litigating Justice Fisher's Decision. "Under 28 U.S.C. § 1738 a federal court must, in according full faith and credit, give to a State court judgment the same preclusive effect as would be given to the judgment under the law of the State in which the judgment was rendered." Johnson v. Watkins, 101 F.3d 792, 794 (2d Cir. 1996). New York's collateral estoppel doctrine "bars a party from re-litigating in a subsequent proceeding an issue clearly raised in a prior proceeding and decided against that party where the party to be precluded had a full and fair opportunity to contest the prior determination." Id. (citation omitted); see Allen v. McCurry, 449 U.S. 90, 102-

04 (1980) (holding that collateral estoppel precludes a § 1983 plaintiff from re-litigating facts established in a prior criminal conviction). In Phelan v. Sullivan, 541 Fed. App'x. 21 (2d Cir. 2013), the Circuit upheld a finding of collateral estoppel where the plaintiff had the opportunity to litigate, at a suppression hearing and on appeal to the New York Appellate Division, whether property was seized in violation of his Fourth Amendment rights. 541 Fed. App'x. at 24.

In this case, after a suppression hearing, Justice Fisher held that the line-ups were not suggestive. See Defendants' 56.1 St., ¶ 84. Plaintiff is bound by that ruling because it was argued as part of his appeal (id. at ¶ 161; see also Exhibit JJ, Point III at pg. 56 ("Statements and line-up identifications must be suppressed as fruits of a Dunaway violation …")), which was denied.[1] Justice Fisher held that the statement made by Plaintiff that someone must have accused him of murder was spontaneous and admissible. See Defendants' 56.1 St., ¶ 84. Plaintiff also cannot re-litigate the statements he made to Detective Gillen referencing the murder because that too was fully and fairly litigated through appeal. Plaintiff's statement is further evidence to support the existence of probable cause.

Due to the identifications made by Mr. Carter and Ms. Sanchez, the reports of the events precipitating the murder and the murder itself, as well as Plaintiff's statement concerning the murder, Plaintiff cannot prove that probable cause to prosecute him was lacking.

**B. Plaintiff cannot rebut the presumption of probable cause created by the Grand Jury's Indictment**

A grand jury indictment creates a presumption of probable cause. Savino, 331 F.3d at 72. A plaintiff may only overcome that presumption "by evidence that the indictment

[1] A denial of leave to appeal to the Court of Appeals does not alter this analysis. See, e.g., Fuchsberg & Fuchsberg v. Galizia, 300 F.3d 105, 110-11 (2d Cir. 2002) ("Discretionary denial by the New York Court of Appeals of a party's motion for leave to appeal … is not equivalent to the absence of an opportunity to appeal, and does not prevent the underlying decision of the Appellate Division from having collateral estoppel effect against that party in future proceedings.").

was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." Manganiello, 612 F.3d at 161-62; see also McClellan v. Smith, 439 F.3d 137, 145 (2d Cir. 2006) ("a grand jury indictment gives rise to a presumption that probable cause exists" but "the presumption may be rebutted by evidence of various wrongful acts on the part of police"). The plaintiff's burden in overcoming the presumption of probable cause is a heavy one. Nnodimele v. Derienzo, 13-CV-3461 (ARR)(RLM), 2016 U.S. Dist. LEXIS 9881, at *21 (E.D.N.Y. 2016). It requires the plaintiff to "establish what occurred in the grand jury and to further establish that those circumstances warrant a finding of misconduct sufficient to erode the 'premise that the Grand Jury acts judicially.'" Rothstein, 373 F.3d at 284 (citation omitted).

Four witnesses, Officer Frank Perez, Linda Sanchez, Andrew Carter and Detective Gillen, testified before the Grand Jury.[2] Officer Perez, a non-party, merely testified concerning his discovery of James Abbott's body in the street. See Defendants' 56.1 St., ¶ 63. Ms. Sanchez testified that: On the day of the murder, she was working at C-Town and someone she knew as James Abbott was on her cashier's line; two males were behind Mr. Abbott on her line; the shorter male frequented the store to buy beer and on this particular day, he was buying beer; the two males left the store, stopped in the parking lot and Mr. Abbott walked in the direction of the two males; and on May 14, 1994, she went to the precinct to view a line-up and identified the person in position #1 as the shorter male who was on the cashier's line behind the victim on the date of the murder. Id. at ¶¶ 65-69, 71. Mr. Carter testified that: On April 9, 1994, he was waiting for the bus on Beach Channel Drive between Beach 48th and 49th Streets when he observed three guys coming from C-Town; two guys started hitting the guy with the bag and the smaller guy pulled out a knife and started stabbing the guy with the bag; on May 14, 1994, he

[2] The Grand Jury minutes are attached to this motion as Exhibit X.

went to the precinct to view a line-up and he identified the person in position #1 as the guy who did the stabbing; and the person in position #1 had braids on the day of the murder and his hair was cut on the day of the line-up. Id. at ¶¶ 74-77. Detective Gillen's testimony was limited to that fact that he conducted a line-up viewed by Ms. Sanchez and Mr. Carter, and during the line-up, Kareem Bellamy was in position #1. Id. at ¶ 79.

Plaintiff was indicted (see Defendants' 56.1 St., ¶ 80) and there is no evidence that Detective Gillen helped to procure the indictment in bad faith. Plaintiff cannot overcome this heavy burden and, therefore, Plaintiff's malicious prosecution claim fails.

**C. Plaintiff cannot establish a favorable termination of the criminal charges**

Plaintiff also cannot prove that the criminal proceeding terminated "favorably." In New York, plaintiff's burden is to demonstrate a final termination that is not inconsistent with innocence. Rothstein, 373 F.3d at 286; (citing Smith-Hunter v. Harvey, 95 N.Y.2d 191, 198-99 (2000); Cantalino v. Danner, 96 N.Y.2d 391, 396 (2001) ("The question is whether, under the circumstances of each case, the disposition was inconsistent with the innocence of the accused.")). The Restatement [Second] of Torts § 661 states that "[t]he formal abandonment of proceedings by a public prosecutor is not a sufficient termination in favor of the accused if the abandonment is due to the impossibility or impracticability of bringing the accused to trial." The Court's decision in Mitchell v. City of Albany, 08-CV-871, 2010 U.S. Dist. LEXIS 31426 (N.D.N.Y. Mar. 31, 2010) is instructive. In Mitchell, the Court held that abandonment of the underlying prosecution does not qualify as a favorable termination for purposes of a malicious prosecution claim when the prosecution became impossible.[3] 2010 U.S. Dist. LEXIS 31426, at *19-20. "The abandonment … occurred not because of some inaction by the prosecutor that

[3] See also Donahue v. Gavin, 280 F.3d 371, 384 (3d Cir. 2002) (plaintiffs failed to establish a favorable termination when the prosecutor dismissed the charges because a change in the law made it unlikely that the plaintiff would receive additional jail time).

could be inferred as impacting the question of [] innocence, or because of the accused's assertion of a constitutional or other privilege, but because [] death made prosecution impossible." Mitchell, 2010 U.S. Dist. LEXIS 31426, at *19. The Court further reasoned that "termination was not the result of a decision or omission by the prosecution that could be construed as an adjudication on the merits not inconsistent with the innocence of the accused, and was not the result of the accused's assertion of a right or privilege." Id.

Plaintiff was convicted of second degree depraved indifference murder which was upheld on direct appeal and federal habeas corpus review. See Defendants' 56.1 St., ¶¶ 159-160, 162-167. Plaintiff was granted a new trial even though Michael Green committed perjury and fabricated evidence. Id. at ¶¶ 201-203, 209. The Queens District Attorney's Office was left with no choice but to dismiss the indictment against Plaintiff because it could no longer sustain a conviction in a new trial due to a change in the penal law regarding the definition of depraved indifference murder under People v Payne, 3 N.Y.3d 266 (2004), People v Feingold, 7 N.Y.3d 288 (2006) and progeny. See id. at ¶¶ 212, 213 ("The People can't, in good faith, proceed with a subsequent prosecution for depraved indifference murder because we are legally prohibited from doing so … not because he has been exonerated or because we believe him to be *actually innocent* but because a continued prosecution is not legally sustainable.") (emphasis added).

It is Plaintiff's burden to demonstrate that the dismissal was not inconsistent with innocence. Rothstein, 373 F.3d at 286 (citation omitted). Given the fact that the change in the law made it impossible to retry Plaintiff, he cannot demonstrate that the dismissal was not inconsistent with innocence and his claim must fail. Put another way, Plaintiff cannot demonstrate a favorable termination. His malicious prosecution claim must be dismissed as a matter of law.

## POINT II

## DEFENDANTS GILLEN AND SOLOMENO ARE ENTITLED TO THE DEFENSE OF QUALIFIED IMMUNITY

Qualified immunity is "an immunity from suit rather than the mere defense to liability and is effectively lost if the case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The question of qualified immunity is independent of the merits of the underlying action and must be examined independent of the underlying claims. Saucier v. Katz, 533 U.S. 194, 204 (2001). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). The purpose of qualified immunity is to protect government employees from civil liability where performance of their discretionary functions "does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1992).

"The standard for qualified immunity from a malicious prosecution claim is the same as that for false arrest: an arresting officer 'is entitled to qualified immunity if (a) it was objectively reasonable for the officer to believe that probable cause existed or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" Ullah v. Office of the Dist. Attorney, No. 07-CV-2687, 2009 U.S. Dist. LEXIS 61607, at *10 (S.D.N.Y. July 20, 2009) (quoting O'Neill v. Town of Babylon, 986 F.2d 646, 649-50 (2d Cir. 1993)). "Probable cause, in the context of malicious prosecution, has … been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003); see also Rueda v. Kreth, No. 01-CV-2819, 2005 U.S. Dist. LEXIS 4404, at *18-19 (E.D.N.Y. Feb. 7, 2005) ("In the context of a claim of

malicious prosecution, probable cause focuses on a belief that criminal charges could be successfully prosecuted.").

Even if Plaintiff was able to overcome the presumption of probable cause and prove probable cause to prosecute was lacking, Defendants would be entitled to qualified immunity because reasonable officers could at least disagree about whether probable cause to prosecute existed. It is undisputed that Plaintiff was identified three separate times: (1) Ms. Sanchez's report to the police where she saw one of the individuals from the morning of the murder on the street drinking a 40 ounce beer, (2) Ms. Sanchez's line-up identification and (3) Mr. Carter's line-up identification. See Defendants' 56.1 St., ¶¶ 30-32, 49, 53-55. Defendants had at least arguable probable cause to believe that a prosecution against Plaintiff would succeed. See O'Brien v. City of Yonkers, 07-CV-3974 (KMK), 2013 U.S. Dist. LEXIS 43551, at *59-60 (S.D.N.Y. Mar. 22, 2013) (written statement describing the events and photographic identification of Plaintiff prior to initiating the prosecution provided arguable probable cause to believe that a prosecution against Plaintiff would succeed); Gaston, supra, 851 F. Supp. 2d at 795-96 (finding qualified immunity because victim's identification of assailant in photo array and lineup established arguable probable cause).

In light of the Second Circuit precedent holding that "absent circumstances that raise doubts as to the victim's veracity, a victim's identification is typically sufficient to provide probable cause," (Singer v. Fulton County Sheriff, 63 F.3d 110, 119 (2d Cir. 1995)), it was objectively reasonable for the officers to believe probable cause existed. Plaintiff cannot produce any evidence to suggest that Detectives Gillen and Solomeno should have doubted Ms. Sanchez and Mr. Carter's credibility. For that reason alone, they are entitled to the defense of qualified immunity. See Keith v. City of New York, No. 14-4788-cv, 2016 U.S. App. LEXIS

4208, at *6-7 (2d. Cir. Mar. 7, 2016) (citation omitted) ("at an absolute minimum, an officer of reasonable competence could have concluded that the probable cause test had been met on the basis of the victim's identification of the plaintiff, which is all that is necessary for qualified immunity to attach") (internal quotations and citation omitted).

**POINT III**

**PLAINTIFF CANNOT SHOW THAT ANY ALLEGED FABRICATION OF EVIDENCE BY DEFENDANTS GILLEN OR SOLOMENO CAUSED HIM TO SUFFER INJURY AND HIS FAIR TRIAL CLAIM MUST, THEREFORE, FAIL**

A person suffers a constitutional violation if an (1) investigating official (2) fabricates evidence of a material nature (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result. See Jocks v. Tavernier, 316 F.3d 128, 138 (2d Cir. 2003); Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997). A fair trial claim can also arise where police or prosecutors "withhold evidence that is 'material' to a criminal defendant's guilt or punishment." McCaffrey v. City of New York, 11 Civ. 1636 (RJS), 2013 U.S. Dist. LEXIS 18815, at *34 (S.D.N.Y. Feb. 7, 2013) (citing Brady v. Maryland, 373 U.S. 83, 87 (1963)); see Fappiano v. City of New York, 2016 U.S. App. LEXIS 4210, at *3 (2d Cir. Mar. 7, 2016) ("A fair trial claim may also arise where the police or prosecutors withhold material exculpatory or impeaching evidence from a defendant"). To establish a Brady violation, a claimant must show that "[t]he evidence at issue [is] favorable to the accused, either because it is exculpatory, or because it is impeaching; [the] evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." DiSimone v. Phillips, 461 F.3d 181, 192 (2d Cir. 2006) (citation omitted). To establish prejudice, a plaintiff must show the evidence was

material; i.e., whether the "evidentiary suppression undermines confidence in the outcome of the trial." Leka v. Portuondo, 257 F.3d 89, 104 (2d Cir. 2001). Police officers may only be held liable for fair trial claims sounding in a Brady violation when they intentionally suppress exculpatory evidence. Fappiano, 2016 U.S. App. LEXIS 4210, at *4.

Plaintiff was convicted based on the following evidence adduced at trial:

(1) the testimony of Linda Sanchez regarding the actions of the men inside and outside of C-Town and the testimony of Andrew Carter regarding the observation of the murder;

(2) Ms. Sanchez and Mr. Carter's line-up identifications of Plaintiff;

(3) Ms. Sanchez and Mr. Carter's in-court identifications of Plaintiff; and

(4) Plaintiff's threat to Ms. Sanchez, his statements to police, and his outbursts during the trial.

Linda Sanchez testified that on the morning of the murder, Plaintiff was with a taller male inside C-Town, and when the decedent exited the store, he walked in the same direction as the two males. See Defendants' 56.1 St., ¶¶ 96-100. Ms. Sanchez testified that one week after the murder, Plaintiff threatened her saying, "you know, you know, you fucking bitch, you're next." Id. at ¶ 102. Ms. Sanchez testified that a few weeks later, she saw Plaintiff on Beach Channel Drive wearing a yellow shirt, holding a 40 ounce beer, pointing and yelling in her direction. Id. at ¶ 103. Ms. Sanchez testified that she identified Plaintiff in a line-up (position #1) and she made an in-court identification of Plaintiff as one of the males inside C-Town on the shortly before the murder. Id. at ¶¶ 96, 105-106. Andrew Carter testified that he observed three men come from C-Town to the corner of Beach 48th Street and Beach Channel Drive and one of the men stabbed and killed the decedent. See Defendants' 56.1 St., ¶¶ 108, 109. Mr. Carter testified that he was able to get a good look at the faces of the perpetrators and made an in-court

identification of Plaintiff as the person who pulled out the knife and stabbed the decedent. Id. at ¶¶ 110, 111. Mr. Carter testified that there is no doubt in his mind that Plaintiff Kareem Bellamy stabbed the victim that morning. Id. at ¶ 112. The jury also heard that when Plaintiff was picked up and told he was being detained for drinking alcohol in public, he stated "this must be a case of mistaken identity, somebody probably accused me of murdering someone." Id. at ¶¶ 137, 138. That spontaneous outburst was only corroborated by the outbursts Plaintiff made in front of the jury during trial. Id. at ¶ 133.

This constituted the material evidence presented at Plaintiff's criminal trial. As discussed above, Plaintiff is collaterally estopped from re-litigating the constitutionality of the line-up identifications and his spontaneous statement to police concerning the murder. See Point I A. There is also no evidence to suggest that Gillen and Solomeno had anything to do with the threat allegation concerning Ms. Sanchez. See Defendants' 56.1 St., ¶¶ 85-88. In fact, there is no evidence of witness tampering concerning Ms. Sanchez at all; she was consistent in 1994 and 1995, during the 440 hearings and during her deposition. Id. at ¶¶ 65-72, 92-106, 178-180. Similarly, there is no evidence that Gillen and Solomeno knew about witness protection or expenses given to Ms. Sanchez as this was all handled by the District Attorney's Office. Id. at ¶¶ 85-92. Plaintiff's blurt-outs at trial (id. at ¶ 133) and to Detective Gillen were the most damning evidence, (see People v. Bellamy, 872 N.Y.S.2d 692, 2008 N.Y. Misc. LEXIS 4672, at *17-18 n. 14, 15 (N.Y. Sup. Ct. 2008) (According to several jurors, Bellamy was convicted by the things he said: "the defendant's own statements, to police, to witnesses and in court helped the jury find him guilty of murder")), not any of the immaterial allegations pointed in the direction of Gillen and Solomeno.

The dubious recantation from Andrew Carter is not reliable and was previously discredited. See Bellamy, 2008 N.Y. Misc. LEXIS 4672, at *35-36 ("This Court views Carter as using his so-called "street smarts" to get $1,350 for telling defense counsel what he assumed they wanted to hear and does not credit his recantation testimony at the CPL 440 hearing"), (citing People v. Shilitano, 218 N.Y. 161, 170 (1916) ("[t]here is no form of proof so unreliable as recanting testimony")). The recant is also belied by the testimony from Plaintiff's own investigator, Donald Barclay. See Defendants' 56.1 St., 190, 191 (Mr. Barclay testified that at the first meeting with Mr. Carter, before money was mentioned, Mr. Carter remembered the incident well and stated he was positive and there was no doubt in his mind that Kareem, the criminal defendant, is the one who killed James Abbott). The recant should not be relied upon by this Court either.

Plaintiff cannot re-litigate the line-up identifications or his own spontaneous statements to the police, cannot dispute the testimony of Ms. Sanchez, and cannot dispute the unreliability of Mr. Carter's paid recantation testimony. Since Plaintiff cannot attack the material evidence, the remaining allegations would not influence the jury's decision and could not have caused him a deprivation liberty. See Jones v. City of New York, No. 12-CV-3658 (JG), 2013 U.S. Dist. LEXIS 162235, at *30-31 (E.D.N.Y. Nov.14, 2013) (officers' allegedly false statements to the district attorney that they had conducted a show-up were "insufficiently material" to sustain a denial of fair trial claim because there was identification evidence that "render[ed] evidence of the allegedly fabricated show-up essentially immaterial."), vacated on other grounds, 603 Fed. App'x. 13 (2d Cir. Mar. 4, 2015). Here, the evidence of the identifications and Plaintiff's statements were material and influential to the jury's decision. Any other evidence is immaterial and cannot sustain a fair trial claim.

Any evidence that did not go to the jury cannot form the basis of a fair trial claim. See Fappiano v. City of New York, 07-CV-2476 (SLT)(SMG), 2014 U.S. Dist. LEXIS 179584, at *57-58 (E.D.N.Y. Jan. 7, 2015), (citing Zahrey v. Coffey, 221 F.3d 342, 348 (2d Cir. 2000) ("explaining that there is no 'constitutional violation' based on evidence fabrication, 'in and of itself' because the violation occurs when the fabricated evidence 'result[s] in a deprivation of ... liberty'") and (Buckley v. Fitzsimmons, 20 F.3d 789, 795 (7th Cir. 1994) ("observing that if a prosecutor tortured a witness to obtain a statement implicating defendant and put that statement 'in a drawer, or framed it and hung it on the wall but took no other step,' no constitutional right of defendant would be violated")). Moreover, any evidence concerning Rodney Harris and Ishmael Melvin are not material because the detectives investigated by trying to speak to "Anna Simmons" and showed Ms. Sanchez and Mr. Carter photo arrays of Harris and Melvin without a positive identification. See Defendants' 56.1 St., ¶¶ 23-29, 134-136. Evidence of the Simmons call, Rodney Harris and Ismael Melvin were submitted to the jury for consideration. Lastly, any other impeachment against Detective Gillen would be immaterial.[4] See May v. Hoke, 711 F. Supp. 703, 712 (E.D.N.Y. 1988) aff'd, 875 F.2d 857 (2d Cir. 1989) (finding "in light of overwhelming evidence of guilt, there simply was no 'reasonable probability' that collateral impeachment of [an investigating police officer] would have resulted in a different verdict").

Accordingly, Plaintiff cannot show that his due process rights were violated by Defendants Gillen and Solomeno.

[4] Detective Solomeno did not testify at the criminal trial.

## POINT IV

## PLAINTIFF'S FOURTEENTH AMENDMENT DUE PROCESS CLAIM IS DUPLICATIVE AND MUST BE DISMISSED

"Section 1983 'is not itself a source of substantive rights,' but merely 'provides a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271 (1994) (plurality opinion) (quoting Baker v. McCollan, 443 U.S. 137, 144, n.3 (1979)). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." Id. (citations omitted; emphasis added). "Section 1983 claims of deprivations of liberty related to criminal prosecutions implicate the Fourth Amendment right to be free of unreasonable seizure of the person." Albright, 510 U.S. at 271. "Where 'the Fourth Amendment provides an explicit textual source of constitutional protection against [a type] of physically intrusive governmental conduct, that Amendment, not the more generalized notion of substantive due process, must be the guide for analy[sis] … .'" Maliha v. Faluotico, 286 F. App'x 742, 744 (2d Cir. 2008) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989) (alterations in original) (noting claims relating to the defendants' falsification of documents and exaggerating claims, which stemmed from the same set of actions as the plaintiff's Fourth Amendment claims, "merge[d]" with the Fourth Amendment claims); see also Bryant v. City of New York, 404 F.3d 128, 135 (2d Cir. 2005) (same) (citation omitted).

Following this principle, courts dismiss Fourteenth Amendment due process claims when the conduct involves an allegedly malicious prosecution because "the Fourth Amendment provides the source for [such] a claim under Section 1983." Conte v. County of Nassau, No. 06-CV-4746 (JFB)(ETB), 2008 U.S. Dist. LEXIS 25694, at *44-45 n.12 (E.D.N.Y. Mar. 31, 2008) (rejecting the argument that actions constituting malicious prosecution, even if

allegedly done "in [] an outrageously arbitrary way" could be based on substantive due process); see also Murphy v. Lynn, 118 F.3d 938, 944 (2d Cir. 1997); Bouche v. City of Mount Vernon, 11 Civ. 5246 (SAS), 2012 U.S. Dist. LEXIS 40246, at *25-26 (S.D.N.Y. Mar. 23, 2012) (dismissing Fourteenth Amendment substantive due process claims where claim based on events surrounding arrest and prosecution, and better analyzed under the Fourth Amendment). In the instant case, the conduct alleged by Plaintiff is already covered under the Fourth Amendment protections against malicious prosecution and Sixth Amendment right to a fair trial. Thus, this claim must be dismissed as duplicative.

## POINT V

## ANY CLAIMS AGAINST THE JOHN DOE DEFENDANTS ARE TIME-BARRED AND MUST BE DISMISSED

New York's three-year statute of limitations for unspecified personal injury actions applies to claims under § 1983. Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002); N.Y. C.P.L.R. § 214 (5). "It is familiar law that 'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued." Tapia-Ortiz v. Doe, 171 F.3d 150, 152 (2d Cir. 1999) (internal quotations and citation omitted). At best, Plaintiff's claims accrued when the charges were dismissed in September of 2011. See Exhibit OO. Plaintiff filed his Complaint on March 1, 2012, (see Exhibit B), more than four years ago. Accordingly, Plaintiff's claims against the John Doe Defendants are time-barred. See Lewis v. City of New York, 12 Civ. 2836 (RRM)(RML), 2013 U.S. Dist. LEXIS 180202, at *9-11 (E.D.N.Y. Dec. 24, 2013), aff'd, 591 F. App'x 21 (2d Cir. 2015).

## POINT VI

## PLAINTIFF CANNOT ESTABLISH A CLAIM AGAINST THE CITY OF NEW YORK

A municipality can be found liable under § 1983 only where it causes the constitutional violation at issue. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."). "To hold a city liable under [section] 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007) (internal quotation marks and citation omitted). Municipalities can only be held liable under § 1983 when they are a "moving force" behind the constitutional deprivation. Kentucky v. Graham, 473 U.S. 159, 166 (1985). Because there is no *respondeat superior* liability for § 1983 claims, plaintiff "must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Jeffes v. Barnes, 208 F.3d 49, 61 (2d Cir. 2000). If a plaintiff cannot show that his constitutional rights were violated by a City actor, then there cannot be Monell liability. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986); Vassallo v. Lando, 591 F. Supp. 2d 172, 202 (E.D.N.Y. 2008) (holding that "no Monell claim can lie" where a court finds no constitutional violation). Here Plaintiff cannot show constitutional violations under either theory of Monell liability.

Plaintiff set forth two claims against the City of New York: (1) The District Attorney's Office has a policy or practice of failing to discipline Assistant District Attorneys for summation remarks; and (2) the Queens District Attorney's Office has a policy or practice where

it fails to provide witness protection information to defense counsel. See Exhibit B, Claim VI and VIII.[5] Plaintiff's claims fail for the many reasons addressed herein.

**A. The Monell claims fail as a matter of law**

In Van de Kamp v. Goldstein, 555 U.S. 335 (2009), the Court considered whether absolute prosecutorial immunity extends to claims against a District Attorney's office and its supervisory personnel where it was alleged that the prosecution failed to disclose impeachment material due to a failure to properly train and supervise and a failure to maintain an adequate information management system. The Court, relying on the long-standing principles discussed in Imbler v. Pachtman, 424 U.S. 409 (1976), held that these decisions were prosecutorial functions not actionable against supervisors or the office. Van de Kamp, 555 U.S. at 349. Seventeen years before Van de Kamp, the Second Circuit held that an alleged failure to train on the part of the District Attorney's office with respect to Brady could give rise to municipal liability under Monell. See Walker v. City of New York, 974 F.2d 293 (2d Cir. 1992).

Van de Kamp's analysis fatally undermines the reasoning that training on legal issues – and an assistant's access to information about prosecution witnesses – are something other than prosecutorial functions. In fact, in applying absolute immunity to supervisory acts of prosecutors, including acts involving decisions about training on Brady issues, Van de Kamp specifically held that such acts are prosecutorial in nature.[6] Van de Kamp, 555 U.S. at 344. The Walker court's characterization of such functions as managerial as opposed to prosecutorial enabled it to deem the district attorney's acts as undertaken outside of its quasi-judicial state

[5] Plaintiff is only proceeding on two Monell theories, Claims VI and VIII, and is not pursuing Claim VII. See Stipulation, 12-CV-1025 Civil Docket Sheet, Document # 112.

[6] Supervisory actions taken with respect to summation remarks would also fall under the umbrella of prosecutorial functions. See Robinson v. Rome, 11-CV-1411(NGG)(LB), 2011 U.S. Dist. LEXIS 43784, at *9 (E.D.N.Y. Apr. 20, 2011) (finding ADAs immune from suit for claims related to, *inter alia*, an improper summation).

capacity role and transform such acts into a basis for municipal liability. Walker, 974 F.2d at 301. Under Van de Kamp, the Walker reasoning does not and cannot hold. See Dettelis v. Cnty. of Cattaraugus, 14-CV-1096A(Sr), 2016 U.S. Dist. LEXIS 57459, at *15 (W.D.N.Y. Mar. 31, 2016) (noting "that the Court of Appeals' decision in Walker precedes the Supreme Court's determination in Van de Kamp that prosecutors involved in supervision or training or information system management relating to the obligation to disclose Giglio information enjoy absolute immunity."), adopted by, 2016 U.S. Dist. LEXIS 57229 (W.D.N.Y., Apr. 29, 2016).

Accordingly, Plaintiff's municipal liability claims, all of which are based on acts of the DA's office undertaken in a prosecutorial capacity (summation remarks and the disclosure of impeachment materials) cannot lie.[7]

**B. Plaintiff's alleged improper summation theory of liability fails**

Plaintiff's alleged improper summation remarks fails because (1) he is collaterally estopped from re-litigating that issue here, (2) the summation remarks did not deprive the Plaintiff of due process and (3) to the extent there was any prejudice, it was harmless.

Plaintiff is collaterally estopped from arguing that his constitutional rights were violated as a result of the trial prosecutor's summation remarks. "Failure to appeal an adverse judgment negates the preclusive effect of that judgment only when review was unobtainable 'as a matter of law' …; [w]here review is available but is not sought, estoppel applies." Pinkney v. Keane, 920 F.2d 1090, 1096 (2d Cir. 1990), cert. denied, 111 S. Ct. 2824 (1991). "New York courts appear to regularly apply collateral estoppel where a party to the first proceeding could

[7] A plaintiff could always get around absolute prosecutorial immunity by disguising the claim against the prosecutor as a "Monell failure to train or supervise" claim. Just like a litigant cannot plead a conspiracy to get around immunity, he should not be able to point the finger at the City to make a claim. See Shmueli v. City of New York, 424 F.3d 231, 237-38 (2d Cir. 2005) ("principles [of absolute immunity] are not affected by allegations that improperly motivated prosecutions were commenced or continued pursuant to a conspiracy.") (citation omitted).

have, but neglected, to appeal the judgment." Monaco v. Hogan, 98-CV-3386 (NGG)(RML), 2016 U.S. Dist. LEXIS 44724, at *23 (E.D.N.Y. Mar. 31, 2016) (citation omitted). Filing an appeal, but failing to raise the issue on appeal satisfies the elements of preclusion. See, e.g., Anderson v. Wilson, No. 91-2954, 1992 U.S. App. LEXIS 19245, at *4-6 (7th Cir. Aug. 10, 1992) (holding the failure to appeal the issue of lack of access to legal materials foreclosed consideration on this issue as it was barred by collateral estoppel … "His remedy was to raise these challenges on his direct criminal appeal … He did not do so, and he cannot now ask another federal court to reach a different conclusion."); King v. Kohlmeier, 11-CV-1204, 2012 U.S. Dist. LEXIS 139372, at *5-7 (C.D. Ill. Sept. 27, 2012) (holding plaintiff collaterally estopped from re-litigating the denial of his motion to suppress because his appeal did not challenge the denial of his motion to suppress); Johnson v. City of Aurora, No. 95 C 6441, 1997 U.S. Dist. LEXIS 17065, at *10-11 (Ill. N.D. Oct. 27, 1997) (finding preclusion in § 1983 case where plaintiff had a full and fair opportunity to litigate, as he chose not to appeal the adverse decision, instead seeking appellate review of other decisions made during his criminal trial). Litigants in those scenarios had the *opportunity* to fully and fairly litigate the issue, but waived the argument and chose not to raise the issue on appeal. Plaintiff admits that the allegations set forth in this matter concerning the ADA's summation were not included in his appeal or habeas petition. See Defendants' 56.1 St., ¶ 168. Thus, Plaintiff's first Monell theory fails because he cannot re-litigate and attempt to establish that the trial prosecutor violated of his rights.

Moreover, Plaintiff cannot show that the prosecutor's summation denied him a constitutional right. "A prosecutor's improper summation results in a denial of due process when the improper statements cause substantial prejudice to the defendant [and] the existence of substantial prejudice involves three factors: the severity of the misconduct; the measures adopted

to cure the misconduct; and the certainty of conviction absent the improper statements." United States v. Feliciano, 223 F.3d 102, 123 (2d Cir. 2000) (citation omitted). "[Litigants] who contend that a prosecutor's remarks warrant reversal face a heavy burden, because the misconduct alleged must be so severe and significant as to result in the denial of their right to a fair trial." Id. (citation omitted). "[R]arely will an improper summation meet the requisite level of prejudice." United States v. Mapp, 170 F.3d 328, 337 (2d Cir. 1999); see also Adams v. Artus, 09-CV-1941 (SLT)(VVP), 2012 U.S. Dist. LEXIS 45660, at *25 (E.D.N.Y. Feb. 24, 2012) ("Remarks that are merely 'undesirable' or 'universally condemned' do not clear this hurdle.") (citation omitted), aff'd 2012 U.S. Dist. LEXIS 45656 (E.D.N.Y., Mar. 29, 2012). "A prosecutor may not properly vouch for the credibility of a witness. However, the government is allowed to respond to an argument that impugns its integrity or the integrity of its case … and when defense counsel [] attacked the prosecutor's credibility or the credibility of the government agents, the prosecutor is entitled to reply with rebutting language suitable to the occasion." United States v. Thai, 29 F.3d 785, 807 (2d Cir. 1994) (citations and internal quotation marks omitted).

That is precisely what happened during summation, ADA Guy merely responded to the defense's arguments. Mr. Reiver, Plaintiff's criminal defense attorney, argued that: the two main prosecution witnesses, Ms. Sanchez and Mr. Carter were not credible; the in-court identifications were not reliable because Bellamy was the only black man at counsel table; the People failed to prove a motive and that absence of motive is a factor for the jury to consider; and the People have the burden of disproving Bellamy's alibi that he did not go to C-Town until shortly after the murder. See Defendants' 56.1 St., ¶¶ 144-149. In response, ADA Guy argued that: Ms. Sanchez and Mr. Carter were confused at times but they had no reason to lie; the case was about identification and recognition and the only black man comment had no place in the

trial; there was no proof of motive but also there was no proof that Bellamy did not have a motive, meaning there was no proof either way; and the alibi was fabricated because the timing was so perfectly tailored to immediately after the murder took place. Id. at ¶¶ 151-156. At the conclusion of the summation, ADA Guy argued that based on the evidence "you" (the jury) know who committed the murder and "the evidence shows that you are the murderer and you are not going to get away with it, not this time." Id. at ¶¶ 157, 158. ADA Guy explained that the word "you" in "you know who committed the murder" was improperly transcribed as "I" and, while not so eloquent, he meant that Bellamy had gotten away with murder from the date of the murder to the time of his arrest. Id.

Notwithstanding the prosecutor's lack of eloquence, Plaintiff cannot show "substantial prejudice." During the prosecutor's summation there were three objections made, no sustained objections and only once did the judge state "fair comment." See Defendants' 56.1 St., ¶ 150. One fair comment and one objection came with an instruction from the Court which, legally speaking, cures any prejudice. See, e.g., Mapp, 170 F.3d at 338 ("Any prejudice arguably caused by the prosecutor's remarks was substantially eliminated by a curative instruction promptly given by the trial judge."); see also Exhibit GG, pgs. 1129 and 1144. There were no objections from counsel or the Court at the conclusion of the summation when the prosecutor stated "you know who committed the murder" and "the evidence shows you are the murderer and you are not going to get away with it, not this time." See Exhibit GG, pgs. 1149 and 1150. Taken as a whole in the context of the entire trial, it is clear no substantial prejudice resulted.

In any event, the harmless error doctrine is applicable to prosecutorial misconduct involving statements to the jury. Garofolo v. Coomb, 804 F.2d 201, 206 (2d Cir. 1986) (citation omitted). As discussed in Point III, Plaintiff was convicted based on own statements (to police,

to Ms. Sanchez and in court), the testimony of Linda Sanchez and Andrew Carter, and their line-up identifications and in-court identifications. Again, taken in the context of the entire trial, Plaintiff cannot establish that his due process rights were violated during summation. If Plaintiff cannot establish an underlying constitutional violation, the Court does not reach the question as to whether the moving force behind the violation was a policy or practice of the DA's office.

**C. Plaintiff's alleged failure to provide impeachment material theory of liability fails**

A Brady claim has three components: (1) the material "evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching," (2) "that evidence must have been suppressed by the State, either willfully or inadvertently," and (3) "prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999). The suppressed evidence must have been material, that is, "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. at 280 (citation omitted).

Plaintiff claims that the DA's office failed to disclose the full extent of the expenses paid to Ms. Sanchez, amounting to approximately $2,800. However, at the time of Ms. Sanchez's trial testimony, she had only been in witness protection for two days (she entered witness protection on November 28, 1995) and could not see into the future to testify about the total sum of money she would receive for her entire stay in the program. See Defendants' 56.1 St., ¶¶ 87, 92. On November 30, 1995, the prosecutor affirmatively elicited testimony from Ms. Sanchez that she was relocated and receiving money from the DA's office. See id. at ¶¶ 92-94 (she received $50 and was receiving $25 a day for food and pampers for her babies). In summation, Mr. Reiver argued that Ms. Sanchez was not credible and only testified she was threatened by Bellamy in order to get paid $25 per day. Id. at ¶¶ 144, 145.

Plaintiff cannot show any of the Brady elements. The evidence of money and relocation were elicited and Ms. Sanchez was impeached on that topic. The ADA brought the information out affirmatively on direct examination, so Plaintiff cannot show it was suppressed by the State. Also, no prejudice ensued. Plaintiff's criminal attorney argued that Ms. Sanchez lied to get money and she could not be believed. The most persuasive fact is that Plaintiff previously litigated this issue before Judge Blumenfeld who held that there was no Brady violation. See Bellamy, 2008 N.Y. Misc. LEXIS 4672, at *21-23 ("The jury was told that she had been relocated and it was not known to anyone at the time of the trial that she would eventually obtain Section 8 housing. This was not a Brady violation and knowledge of it would have still left the jury with the unanswered question of why she called the police that day and why [Bellamy] said what he did"). Here again, if Plaintiff cannot establish an underlying constitutional violation, the Court does not reach the question as to whether the moving force or cause of the violation was a policy or practice of the DA's office

Accordingly, the claim against the City of New York should be dismissed because Plaintiff cannot prove an underlying violation of his constitutional rights.

## POINT VII

## PLAINTIFF'S STATE LAW INFLICTION OF EMOTIONAL DISTRESS CLAIMS FAIL

Infliction of emotional distress claims are gap-filling causes of action meant to address those few areas of outrageous anti-social behavior not addressed under any other cause of action. Rasmussen v. City of New York, 766 F. Supp. 2d 399, 415 (E.D.N.Y. 2011). The New York Court of Appeals stated in Fischer v. Maloney, 43 N.Y.2d 553, 557-58 (1978), that "it may be questioned whether the doctrine of liability for intentional infliction of extreme emotional distress should be applicable where the conduct complained of falls well within the

ambit of other traditional tort liability, [such as] malicious prosecution and abuse of process." The Second Circuit in Bender v. City of New York, 78 F.3d 787, 791-92 (2d Cir. 1996), recognized that it was "uncertain whether the state courts would entertain an emotional distress claim" where the elements substantially overlap with traditional torts already alleged in a case, such as battery and false arrest. State and federal courts in this Circuit have consistently held that the torts of intentional and negligent infliction of emotional distress ("IIED" and "NIED") may not be used as a substitute for an available traditional tort theory. See Caravalho v. City of New York, 13-cv-4174 (PKC)(MHD), 2016 U.S. Dist. LEXIS 44280, at *75 (S.D.N.Y. Mar. 31, 2016) (collecting cases). In Caravalho, the Court dismissed the infliction of emotional distress claims as duplicative because the conduct at issue and any resulting emotional damage was "entirely subsumed by plaintiff's common law assault and battery claim and his federal excessive force claim." Here, Plaintiff alleges that the Detectives "wrongful arrest, prosecution and incarceration, including falsification and fabrication of evidence" constitutes extreme and outrageous conduct. See Exhibit B, ¶¶ 464, 469. Like Caravalho, the alleged conduct and any resulting emotional damage is entirely subsumed by Plaintiff's malicious prosecution and fair trial/fabrication of evidence claims. Accordingly, Plaintiff's IIED and NIED claims fail.[8]

These claims fail for substantive reasons as well. To state a claim for intentional infliction of emotional distress, a plaintiff must plead "(1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." Bender, 78 F.3d at 790. The conduct must be "so

[8] Plaintiff's NIED claim also fails as a matter of law because he cannot assert an NIED claim based on intentional act, such as an arrest or prosecution. Jean-Louis v. Am. Airlines, 08-CV-03898 (FB)(SMG), 2010 U.S. Dist. LEXIS 77292, at *9 (E.D.N.Y. July 30, 2010); Stampf v. Long Island R.R. Auth., 07-CV-3349 (SMG), 2010 U.S. Dist. LEXIS 58551, at *39-40 (E.D.N.Y. June 14, 2010). Plaintiff's allegations of intentional conduct – arrest, prosecution and fabrication of evidence – belie any possibility of Defendants' negligence.

outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Conboy v. AT&T Corp., 241 F.3d 242, 258 (2d Cir. 2001). Even if Plaintiff could come forward with some conduct is not covered by his malicious prosecution and fair trial claims, that conduct would not be extreme and outrageous beyond all bounds of decency. In fact, police conduct relating to a criminal prosecution and fabrication of evidence would not rise to the level of utterly intolerable and atrocious. See Thomsen v. City of New York, 15cv2668 (DLC), 2016 U.S. Dist. LEXIS 17079, at *35 (S.D.N.Y. Feb. 11, 2016) (dismissing IIED claim where the conduct at issue, false arrest and malicious prosecution, does not rise to the level of outrageousness that would meet the high standards for such conduct under New York law).

A cause of action for NIED can be pursued either under a direct duty theory or bystander theory. A "direct duty theory" arises "if [the plaintiff] suffers an emotional injury from defendant's breach of a duty which unreasonably endangered her own physical safety." Mortise v. United States, 102 F.3d 693, 696 (2d Cir. 1996) (citing Kennedy v. McKesson Co., 58 N.Y.2d 500, 504 (1983); Green v. Leibowitz, 118 A.D.2d 756, 757 (2d Dep't 1986)). "The duty in such cases must be specific to the plaintiff, and not some amorphous, free-floating duty to society." Mortise, 102 F.3d at 696 (citing Johnson v. Jamaica Hosp., 62 N.Y.2d 523, 526-27 (1984)); see, e.g., Kraft v. City of New York, 696 F. Supp. 2d 403, 424 (S.D.N.Y. 2010), (citing Hazan v. City of New York, 98 Civ. 1716 (LAP), 1999 U.S. Dist. LEXIS 10499, at *15 (S.D.N.Y. July 12, 1999) ("Although the City [of New York] has a general duty to prevent its police force from inflicting unreasonable harm on society at large, this duty was not a special one owed specifically to the plaintiff.")). Defendants Gillen and Solemono did not owe a duty to Plaintiff. For that reason, among others, the NIED claim must be dismissed.

**CONCLUSION**

Defendants City of New York, John Gillen and Michael Solomeno respectfully request that the Court grant them summary judgment and dismiss the Complaint in its entirety, together with such other and further relief as this Court may deem just and proper.

Dated: New York, New York
May 13, 2016

ZACHARY W. CARTER
Corporation Counsel for the City of New York
Attorney for Defendants City of New York, John Gillen and Michael Solomeno
100 Church Street
New York, New York 10007

By: /s/
MATTHEW J. MODAFFERI

## DECLARATION OF SERVICE

Matthew J. Modafferi declares, under penalty of perjury and pursuant to 28 U.S.C. § 1746, that the following is true and correct: On May 13, 2016, I served the annexed **DEFENDANTS CITY OF NEW YORK, JOHN GILLEN AND MICHAEL SOLOMENO'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** upon Plaintiff's attorney, Thomas Hoffman, Esq., by depositing a copy of same, enclosed in a first class, postpaid properly addressed wrapper in a post office/official depository under the exclusive care and custody of the United States Postal Service, within the State of New York, directed to Plaintiff's attorneys:

Thomas Hoffman, Esq.
Law Offices of Thomas Hoffman, P.C.
5 Columbus Circle at 1790 Broadway, 6th Floor
New York, New York 10019

being the address designated by Plaintiff for that purpose.

Dated: New York, New York
May 13, 2016

/s/

MATTHEW J. MODAFFERI
SENIOR COUNSEL

12-CV-1025 (AMD)(PK)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Kareem Bellamy,

Plaintiff,

-against-

City of New York,
John J. Gillen,
Michael F. Solomeno,
John Doe 1 and John Doe 2, Supervising Officers at the NYPD 101st Precinct,

Defendants.

**DEFENDANTS CITY OF NEW YORK, JOHN GILLEN AND MICHAEL SOLOMENO'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

***ZACHARY W. CARTER***
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, New York 10007*

*Of Counsel: Matthew J. Modafferi*
*Tel: (212) 356-2331*

*Due and timely service is hereby admitted.*

*New York, New York* ........................................., *2016.*

.........................................................................., *Esq.*

*Attorney for* ......................................................................