12-CV-1025 (AMD)(PK)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Kareem Bellamy,

Plaintiff,

-against-

City of New York,
John J. Gillen,
Michael F. Solomeno,
John Doe 1 and John Doe 2, Supervising Officers at the NYPD 101st Precinct,

Defendants.

# DEFENDANTS CITY OF NEW YORK, JOHN GILLEN AND MICHAEL SOLOMENO'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION

***ZACHARY W. CARTER***
*Corporation Counsel of the City of New York*
*Attorney for Defendants City of New York, John Gillen and Michael Solomeno*
*100 Church Street*
*New York, New York 10007*

*Of Counsel: Matthew J. Modafferi*
*Tel: (212) 356-2331*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

ARGUMENT

POINT I

ALL FACTS IN DEFENDANTS' RULE 56.1 STATEMENT SHOULD BE DEEMED ADMITTED ..... 1

POINT II

THE 385 ADDITIONAL PARAGRAPHS AND COUNSEL'S SELF-SERVING AFFIDAVIT SHOULD NOT BE CONSIDERED ..... 4

POINT III

PLAINTIFF CANNOT PROVE A MALICIOUS PROSECUTION CLAIM ..... 6

A. Plaintiff Cannot Prove a Favorable Termination ..... 6

B. Plaintiff Cannot Prove a Lack of Probable Cause to Prosecute ..... 9

POINT IV

DEFENDANTS GILLEN AND SOLOMENO ARE ENTITLED TO QUALIFIED IMMUNITY ..... 10

POINT V

PLAINTIFF'S CLAIM FOR WITHHOLDING AND FABRICATING EVIDENCE FAILS ..... 11

POINT VI

PLAINTIFF CANNOT ESTABLISH A CLAIM AGAINST THE CITY OF NEW YORK........................................12

A. The alleged failure to provide impeachment material theory fails..........................................................13

B. The alleged improper summation theory fails..............................14

POINT VII

THE IIED CLAIM IS DUPLICATIVE AND FAILS ON THE MERITS..........................................................................17

POINT VIII

THE FOURTEENTH AMENDMENT CLAIM IS DUPLICATIVE AND FAILS ..................................................................18

CONCLUSION..................................................................................................................18

## TABLE OF AUTHORITIES


**Cases** — **Pages**

Bender v. City of New York,
78 F.3d 787 (2d Cir. 1996) ..... 17

Bristol v. Nassau County,
08 Civ. 3480 (AMD)(SIL),
2016 U.S. Dist. LEXIS 63034 (E.D.N.Y. May 12, 2016) ..... 14

Carey v. City of Mt. Vernon,
09 Civ. 3191 (JSR),
2010 U.S. Dist. LEXIS 98235 (S.D.N.Y. Sep. 10, 2010) ..... 17

Fappiano v. City of New York,
2016 U.S. App. LEXIS 4210 (2d Cir. Mar. 7, 2016) ..... 10, 11

Giannullo v. City of New York,
332 F.3d 139 (2d Cir. 2003) ..... 2

Hollander v. American Cyanamid Co.,
172 F.3d 192, 198 (2d Cir.),
cert. denied, 528 U.S. 965 (1999) ..... 5

Holtz v. Rockefeller & Co., Inc.,
258 F.3d 62 (2d Cir. 2001) ..... 1

Jovanovic v. City of New York,
2010 U.S. Dist. LEXIS 144388 (S.D.N.Y. Sept. 28, 2010),
aff'd, 486 Fed. App'x 149 (2d Cir. 2012) ..... 14-15, 15

Mangino v. Incorporated Village of Patchogue,
739 F. Supp. 2d 205 (E.D.N.Y. 2010) ..... 6

Miller v. Barkley,
03 Civ. 8580 (DLC),
2006 U.S. Dist. LEXIS 4801 (S.D.N.Y. Feb, 8, 2006) ..... 16

Mitchell v. City of Albany,
2010 U.S. Dist. LEXIS 31426 (N.D.N.Y. Mar. 31, 2010) ..... 7

Morgan v. Nassau County,
2009 U.S. Dist. LEXIS 79180 (E.D.N.Y. Sept. 2, 2009) ..... 8

Morse v. Spitzer,
07-CV-4793 (CBA)(RML),
2012 U.S. Dist. LEXIS 110241 (E.D.N.Y. Aug. 3, 2012) .......... 10

Moulton v. State of New York,
114 A.D.3d 115 (3d Dep't 2013) .......... 8

Murphy v. Lynn,
118 F.3d 938 (2d Cir. 1997) .......... 18

People v. Baker, 14 N.Y.3d 266, 272 (2010),
766 F. Supp. 2d 399 (E.D.N.Y. 2011) .......... 7

People v. Bellamy, ("Bellamy I")
2008 N.Y. Misc. LEXIS 4672 (N.Y. Sup. Ct. 2008) .......... 7, 10, 13

People v. Bellamy, ("Bellamy II")
2010 N.Y. Misc. LEXIS 47 (N.Y. Sup. Ct. 2010) .......... 7

People v. Biggs,
1 N.Y.3d 225 (2003) .......... 7

People v. Steadman,
82 N.Y.2d 1 (1993) .......... 13

Poux v. County of Suffolk,
No. 09 CV 3081,
2012 U.S. Dist. LEXIS 41196 (E.D.N.Y. Mar. 23, 2012) .......... 9

Rounseville v. Zahl,
13 F.3d 625 (2d Cir. 1994) .......... 8

Russo v. State of New York,
672 F. 2d 1014 (2d Cir. 1982) .......... 8

Savino v. City of New York,
331 F.3d 63 (2d Cir. 2003) .......... 9

Scotto v. Almenas,
143 F.3d 105 (2d Cir. 1998) .......... 3

Smith-Hunter v. Harvey,
95 N.Y.2d 191 (2000) .......... 6

Spiess v. Pocono Mt. Reg'l Police Dep't,
2013 U.S. Dist. LEXIS 41814 (M.D. Pa. Mar. 26, 2013)........8

Thompson v. Connick,
578 F.3d 293 (5th Cir. 2009)........12

Toro v. Herbert,
01-CV-3386, 03-MISC-0066 (JBW),
2003 U.S. Dist. LEXIS 22600 (E.D.N.Y. Sept. 29, 2003)........15-16

Townes v. City of New York,
176 F.3d 138 (2d Cir. 1999)........15

Turner v. Sabourin,
217 F.R.D. 136 (E.D.N.Y. 2003)........7

U.S. v. Germosen,
139 F.3d 120 (2d Cir. 1998),
cert. denied, 525 U.S. 1083 (1999)........15

U.S. v. LaMorte,
950 F.2d 80 (2d Cir. 1991)........16

U.S. v. Newton,
369 F.3d 659 (2d Cir. 2004)........15

Van de Kamp v. Goldstein,
555 U.S. 335 (2009)........12

Wray v. City of New York,
490 F.3d 189 (2d Cir. 2007)........15

Wyler v. U.S.,
725 F.2d 156 (2d Cir. 1983)........5

**Statutes**

Fed. R. Civ. P. 56 (c)(2)........2

N.Y. Penal Law § 265.01........6

N.Y. Penal Law § 70.15........6

## PRELIMINARY STATEMENT

In an attempt to distract the Court from the undisputed material facts set forth in Defendants' 56.1 Statement that warrant dismissal of this action, plaintiff created two diversions. First, after realizing that he could not dispute the material facts, plaintiff provided his own version of events and labeled it "56.1 Statement of Additional Facts." This 385 paragraph version is a hodgepodge of disputed, incorrect, immaterial statements intended again to distract the Court from the undisputed material facts warranting dismissal.[1] Indeed, plaintiff's assessment of the evidence is so distorted that he incorrectly states "two gang members confessed to murdering the victim." Plaintiff somehow transforms the undisputed fraudulent tape and the undisputed false statements by Michael Green into a confession. The "confession" and claim of innocence is a distraction.[2] Notwithstanding the diversions, plaintiff failed to dispute the material facts listed in Defendants' 56.1 Statement. The undisputed material facts warrant dismissal of this case as a matter of law.

## ARGUMENT

### POINT I

### ALL FACTS IN DEFENDANTS' RULE 56.1 STATEMENT SHOULD BE DEEMED ADMITTED

Plaintiff fails to dispute the facts asserted in Defendants' 56.1 Statement. With respect to paragraphs 1 through 20, Plaintiff claims to dispute paragraphs 6, 7 and 12 through 17,

[1] Plaintiff's statement runs contrary to the spirit and purpose of Local Rule 56.1. See Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 74 (2d Cir. 2001) ("The purpose of Local Rule 56.1 is "to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties.").

[2] To the contrary, ADA Guy testified: "I don't buy a single thing this guy has to say about his innocence. I think he is guilty as sin." See Exhibit 1 attached to the 56.1 Response, 242:7-243:10.

19 and 20. Plaintiff does not actually dispute the facts set forth in these paragraphs and they should be deemed admitted. See Giannullo v. City of N.Y., 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party … fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.") (citation omitted). Plaintiff claims to dispute paragraph 7, but the citation does not support the statement that C-Town and its parking lot are not visible from the bus stop. In response to paragraph 12, plaintiff tries to dispute that an interview took place by stating that there are no notes from the interview. No notes do not mean no interview. Also, the claim that a DD5 was fabricated is a conclusory argument without support. Conclusory allegations and argument cannot defeat a summary judgment motion. See Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998) ("The non-moving party may not rely on conclusory allegations") (citations omitted). Plaintiff also sets forth conclusory arguments in paragraphs 15 (Sanchez "fabricated") and 20 ("altered" and "doctored"). In paragraphs 13 through 17 and 20, plaintiff does not controvert the facts, but rather includes additional statements that merely color his claims. The response to paragraph 19 does not cite to admissible evidence and must be disregarded.[3] See Fed. R. Civ. P. 56(c)(2).[4] To be clear, only admissible, undisputed material facts are to be considered on a motion for summary judgment.

Plaintiff cannot dispute paragraphs 22 through 29 because there is nothing in the record to dispute the steps the Detectives took to confirm the "Anna Simmons" call. Instead, plaintiff adds statements, speculation and draws his own conclusions in an attempt to create a dispute where none exists. With respect to paragraphs 33 through 62, plaintiff employs more of

[3] Plaintiff's Exhibit W is an unsworn, handwritten statement and Exhibit S (6873-74) is an affidavit from Donald Barclay where the statements within that are attributed to Terrell Lee constitute hearsay.

[4] Plaintiff also fails to cite to any evidence in response to paragraphs 30, 52, 58, 84, 157 and 158.

the same tactics. In response to paragraphs 33, 47, 51, 53 and 54, plaintiff merely adds additional facts to color his claim: In paragraph 37, plaintiff concludes without any evidentiary support that the statement was fabricated and doctored; in paragraphs 48, 55, 57, 61 and 62, plaintiff's responses do not dispute the facts set forth by Defendants. Plaintiff's response to paragraph 49 is absurd. Ms. Sanchez testified that she was confused about the day the murder took place, but knows it was a Saturday. See Sanchez Deposition annexed to the 56.1 Response as Exhibit 8, p. 25-26. Regardless, Ms. Sanchez is referring to the day of James Abbott's murder. See Exhibit MM, 473:7-24. In response to paragraph 50, plaintiff concludes without support that the line-up sheet was "doctored" where it said Saturday. Plaintiff's conclusion does not dispute the fact asserted by Defendants, that Ms. Sanchez signed and memorialized her identification in a report.

In response to paragraphs 65 through 79, plaintiff attempts to dispute some of the testimony provided by witnesses before the Grand Jury. However, the testimony speaks for itself, (see Defendants' Exhibit X), and plaintiff's additional immaterial statements do not alter the truth of their testimony. In response to paragraphs 85 and 86, plaintiff cannot dispute that Ms. Sanchez reported plaintiff's threat, so he unilaterally declares the threat was fabricated. In paragraphs 88 through 91, plaintiff does not dispute the facts, but includes additional facts and statements as a distraction. Paragraphs 92 through 116,[5] 125 through 131 and 134 through 140 set forth the material testimony from plaintiff's criminal trial. Similarly, paragraphs 172 through 197 and 201 through 208 contain the facts derived from the testimony given during the 440

[5] The responses to paragraphs 117, 119, 120 and 121 do not actually dispute the facts set forth by Defendants.

hearings. The trial and hearing testimony speaks for itself and plaintiff's additional facts, statements, commentary and legal conclusions do not change the accuracy of the testimony.[6]

With respect to the summations, paragraphs 144 through 158, Mr. Reiver's summation speaks for itself (see Defendants' Exhibit FF) and plaintiff's commentary does not dispute anything. ADA Guy's summation is no different. ADA Guy was deposed and he explained his summation. Plaintiff cannot dispute this testimony with his own interpretation of the People's summation. Plaintiff's theory and commentary is not admissible evidence.

The undisputed facts put forth by Defendants warrant summary judgment.

## POINT II

## THE 385 ADDITIONAL PARAGRAPHS AND COUNSEL'S SELF-SERVING AFFIDAVIT SHOULD NOT BE CONSIDERED

In a further attempt to distract the Court from the undisputed material facts set forth by Defendants, plaintiff twists the record to his liking in a 56.1 Statement that is twice the size of Defendants' Statement. Plaintiff's throw the kitchen sink document contains his version of events without considering whether the statements are disputed by other evidence in the record, or are material. The majority of the allegations contained therein are, in fact, disputed. Plaintiff also includes every statement from a deposition that could possibly color his claims – even if the statement is misleading or taken out of context or completely inadmissible – and throws these snippets into the document in an attempt to distract the Court. Plaintiff does not dispute Defendants' Statement and his disputed, misleading statement should not be considered.

[6] Plaintiff's responses to paragraphs 210, 212 and 213 are also insufficient. Plaintiff's legal arguments, commentary and speculation do not dispute the facts surrounding the dismissal.

An attorney's affidavit which is not based on personal knowledge of the relevant facts should be accorded no weight on a motion for summary judgment. See Wyler v. U.S., 725 F.2d 156, 160 (2d Cir. 1983). When an attorney's affirmation does not comply with Rule 56(e), the court should strike the portions thereof which are not made upon the affiant's personal knowledge, contain inadmissible hearsay or make conclusory statements. See Hollander v. American Cyanamid Co., 172 F.3d 192, 198 (2d Cir.), cert. denied, 528 U.S. 965 (1999). Counsel's affidavit should not be considered. It consists of self-serving argument and his own assessment of the evidence.[7] He is not competent to give his opinion of the detective file (paragraph 4), he's not competent to testify about Mr. Reiver or the statements of the ADAs (paragraphs 6, 7, 13 and 16), what the judge and jurors knew or did not know (paragraphs 11, 12 and 17) as it would call for hearsay.[8] Ultimately, plaintiff's counsel cannot help but submit an affidavit because he is a witness. However, the facts he does have personal knowledge of – the payments to witnesses, etc. – are not in the affidavit. Moreover, not only is Mr. Hoffman's affidavit alleging factual information not admissible for purposes of this motion, but it raises an ethical dilemma where he needs to seriously consider withdrawing as counsel from this lawsuit.

[7] The allegation that Terrell Lee corroborated plaintiff is not accurate and not corroborated by admissible evidence.

[8] Judge and jury did not hear most of the statements listed by counsel (paragraphs 11 a and b, 12 a, b, e, f, g, h, k and n) because they were alleged for the first time many years later and formulated to release plaintiff from prison and to form the basis of his civil lawsuit.

## POINT III

## PLAINTIFF CANNOT PROVE A MALICIOUS PROSECUTION CLAIM[9]

### A. Plaintiff Cannot Prove a Favorable Termination

It is "plaintiff's burden [] to demonstrate a final termination that is not inconsistent with innocence." Mangino v. Incorporated Village of Patchogue, 739 F. Supp. 2d 205, 228 (E.D.N.Y. 2010). A favorable termination depends on the circumstances surrounding the cause of the dismissal. See Smith-Hunter v. Harvey, 95 N.Y.2d 191, 196-97 (2000) (discussing dismissals that are not favorable terminations). Plaintiff's certificate of dismissal argument is legally incorrect because the case law makes clear that a plaintiff has to prove the circumstances surrounding the dismissal are not inconsistent with innocence.

In Smith-Hunter, the Court of Appeals cited to the Restatement [Second] of Torts § 661 for the rule that there is no favorable termination when there is an "impossibility or impracticality of bringing the accused to trial." 95 N.Y.2d at 196. Due to a change in the law, it became impossible to re-try plaintiff for depraved indifference murder. See Defendants' 56.1 St., ¶¶ 211-213. Plaintiff fails to mention § 661 of the Restatement in his papers, but argues that a re-trial was not impossible because he could have been tried for weapons possession, manslaughter or another lesser-included offense.[10] That too was impossible. "The Double Jeopardy Clause precludes consecutive prosecutions for greater and lesser included offenses

[9] With respect to the initiation element of malicious prosecution, plaintiff argues there is evidence as to defendant Gillen. Plaintiff cannot set forth any evidence that defendant Solomeno initiated the prosecution and therefore, the claim should be dismissed with prejudice against him.

[10] With respect to the weapons possession charge, it was a misdemeanor that carried a one year sentence. See N.Y. Penal Law § 265.01; N.Y. Penal Law § 70.15. Plaintiff already served more than ten years in prison. A re-trial on the weapons possession would have been pointless.

where, 'the lesser offense … requires no proof beyond that which is required for conviction of the greater.'" People v. Biggs, 1 N.Y.3d 225, 230 (2003) (citations omitted). Manslaughter in the first degree is a lesser included offense of intentional murder in the second degree and plaintiff's acquittal of intentional murder two bars a subsequent prosecution for manslaughter in the first degree on double jeopardy grounds. See Biggs, 1 N.Y.3d at 231 (holding that intentional manslaughter, a lesser included offense of the dismissed intentional murder counts, was the same crime for constitutional double jeopardy purposes, and therefore, "the Double Jeopardy Clauses of both the Federal and State Constitutions precluded defendant's subsequent indictment and prosecution for first degree manslaughter.") (emphasis added).

"[M]anslaughter in the second degree is a lesser-included offense of depraved indifference murder." People v. Baker, 14 N.Y.3d 266, 272 (2010). Plaintiff was neither charged nor indicted for manslaughter in the second degree (see Exhibits V and Y), it was never given to the jury (see Exhibit II), and the five year statute of limitations for manslaughter had since run. See Turner v. Sabourin, 217 F.R.D. 136 (E.D.N.Y. 2003) (an indictment for manslaughter must be lodged within ten years of the commission of the offense – i.e., within five years pursuant to section 30.10(2)(b), with a maximum extension of five additional years pursuant to section 30.10(4) – and Turner could not have been indicted for manslaughter sixteen years after the homicide occurred). James Abbott was murdered in 1994 and the CPL § 440 decisions were rendered in 2008 and 2010, fourteen and sixteen years after the murder. See Defendants' 56.1 St., ¶ 4; see also Bellamy I, 2008 N.Y. Misc. LEXIS 4672 (N.Y. Sup. Ct. 2008); Bellamy II, 2010 N.Y. Misc. LEXIS 47 (N.Y. Sup. Ct. 2010).

Mitchell v. City of Albany, 2010 U.S. Dist. LEXIS 31426 (N.D.N.Y. Mar. 31, 2010) is analogous because the cause of the dismissal, impossibility, is inconsistent with

innocence. In Mitchell, the only difference is how the prosecution because impossible: There, with death and here, with a change in the law. The impossibility – without any indication of innocence – requires the same result. Cf. Spiess v. Pocono Mt. Reg'l Police Dep't, 2013 U.S. Dist. LEXIS 41814, at *36 (M.D. Pa. Mar. 26, 2013) ("[The ADA] did not dismiss the charges because of any plea agreement, *change in law* or some other reason unrelated to the weight of the evidence. ADA Rakaczewski dismissed the charges because the victims lied, the matter lacked prosecutorial merit and the interests of justice commanded dismissal.") (emphasis added).

The cases cited by plaintiff involve instances where there was an indication of innocence. In Moulton v. State of N.Y., the Court found that "habeas corpus release was termination in favor of inmate for malicious prosecution purposes." 114 A.D.3d 115, 126 (3d Dep't 2013). Plaintiff disingenuously removed the habeas corpus release from his citation and replaced it with ellipses. In Morgan v. Nassau Cnty., the prosecutor dismissed the charges because the complainant became unavailable. 2009 U.S. Dist. LEXIS 79180, at *28 (E.D.N.Y. Sept. 2, 2009). Without the appearance of the complainant, the prosecutor presumably concluded that he could not secure a conviction and he, therefore, decided to terminate the prosecution … [s]uch a situation should again go to the benefit of the accused. Id. at *30.

With respect to plaintiff's cross motion, it should be denied because "when the grounds for the dismissal of a criminal proceeding are unclear, New York courts consider whether the proceeding was terminated in plaintiff's favor to be a question of fact that prevents summary judgment." Rounseville v. Zahl, 13 F.3d 625, 629 (2d Cir. 1994); see also Russo v. State of N.Y., 672 F. 2d 1014, 1020 (2d Cir. 1982) ("plaintiff must present evidence of his circumstances under which the criminal proceeding was terminated. If the defendant does not present conflicting evidence, the court may decide the issue as a matter of law. However, if the

evidence conflicts, the issue is one of fact to be decided by the jury."). At a minimum, plaintiff's cross motion is moot because of the reasons set forth in Point IIIB below.

**B. Plaintiff Cannot Prove a Lack of Probable Cause to Prosecute**

Plaintiff failed to rebut the presumption of probable cause created by the Grand Jury indictment. To deal with this inevitable result, plaintiff simply chose to ignore in his papers, the Grand Jury testimony and indictment. Plaintiff cannot show that Gillen procured an indictment in bad faith where his testimony is limited to the mere fact that he conducted a line-up. See Exhibit X. Plaintiff's arguments about the day and the statement of guilt are unavailing because the Government does not have a "duty to present every item of arguably exculpatory evidence in seeking an indictment." Poux v. Cnty. of Suffolk, No. 09 CV 3081, 2012 U.S. Dist. LEXIS 41196, at *84 (E.D.N.Y. Mar. 23, 2012) (quoting Savino v. City of N.Y., 331 F.3d 63, 75 (2d Cir. 2003)).[11] With respect to the allegation that Gillen pressured Carter to identify plaintiff, that is belied by the record. After viewing the line-up, Mr. Carter was 99% sure it was plaintiff, but stated it could have been the person in seat 2. See Defendants' 56.1 St., ¶¶ 51, 53. If Gillen pressured Carter to pick plaintiff, then there would be no reason for the confusion regarding # 2. Also, ADA Antignani was present for the identification, spoke to Mr. Carter and further corroborates Gillen's testimony about Carter. Id. at ¶¶ 55-57. Many years later, plaintiff's investigator spoke to Mr. Carter who stated that there was no doubt in his mind that plaintiff killed James Abbott. Id. at ¶¶ 189-191. Mr. Carter only recanted after being paid by the

[11] Plaintiff's statement to Gillen about being framed for murder was not presented to the Grand Jury and cannot erode the presumption. Ms. Sanchez testified that she was confused about the day the murder took place, but knows it was a Saturday. See Exhibit 8 attached to the 56.1 Response, p. 25-26. Regardless, Ms. Sanchez is referring to the day of James Abbott's murder. See Exhibit MM, 473:7-24. Quibbling over the day show plaintiff's claims are tenuous.

defense team and this recant was previously discredited by Judge Blumenfeld. See Bellamy I, 2008 N.Y. Misc. LEXIS 4672, at *35-36. The Carter "recant" does not meet the high standard to erode the premise that the Grand Jury acted judicially. See Fappiano v. City of N.Y., 2016 U.S. App. LEXIS 4210, at *8 (2d Cir. Mar. 7, 2016) ("Fappiano failed to produce evidence to support his claims that Defendants fabricated the victim's photo or in-person identifications or manipulated the victim into altering her story ... such that a jury could find that what was presented to the grand jury 'warrant[s] a finding of misconduct sufficient to erode the premise that the Grand Jury act[ed] judicially.'").

Even putting aside the indictment, plaintiff cannot prove that probable cause was lacking. The reports from Mr. Carter and Ms. Sanchez about the day of the murder coupled with Ms. Sanchez's identification of plaintiff as the perpetrator out in the street and during the line-up establish probable cause to prosecute. Judge Fisher found probable cause on exactly those facts. See Defendants' 56.1 St., ¶¶ 81, 83. Even assuming for argument's sake that Gillen pressured Carter to pick plaintiff and this was "false evidence," "the existence of probable cause independent of the fabricated evidence is a defense to that claim." Morse v. Spitzer, 07-CV-4793 (CBA)(RML), 2012 U.S. Dist. LEXIS 110241, at *13 (E.D.N.Y. Aug. 3, 2012). Accordingly, plaintiff's malicious prosecution claims (pursuant to federal and state law) must be dismissed.

## POINT IV

## DEFENDANTS GILLEN AND SOLOMENO ARE ENTITLED TO QUALIFIED IMMUNITY

As discussed above, Judge Fisher ruled that the police had probable cause based on: Ms. Sanchez's statements, her phone call to the police informing them that one of the two males from the C-Town was located, and the probability that the two males from the store were

the same two males that Mr. Carter observed commit the murder. See Defendants' 56.1 St., ¶¶ 81, 83. If a judge found probable cause based on those undisputed facts, then reasonable officers can at least disagree whether probable cause existed. It is disingenuous for plaintiff to argue that Sanchez did not see plaintiff on the day of the murder because what she actually stated was that on the day of the murder she "did not see anything," meaning she did not see the actual commission of the murder. See Exhibit 8 attached to the 56.1 Response, 22:17-19; see also Exhibit 9 attached to the 56.1 Response, p. 474. At the very least, Defendants Gillen and Solomeno are entitled to qualified immunity.

## POINT V

## PLAINTIFF'S CLAIM FOR WITHHOLDING AND FABRICATING EVIDENCE FAILS

Plaintiff sets forth five factual arguments, all of which do not prevent summary judgment. First, the argument about Ms. Sanchez not seeing anything and the Saturday/Sunday is a smokescreen. See Point IV and footnote 10 herein. Moreover, plaintiff cannot show that the evidence regarding Ms. Sanchez was intentionally suppressed. Fappiano, 2016 U.S. App. LEXIS 4210, at *6. Second, the allegation that Mr. Carter was coerced is belied by the record and no rational juror could believe a blatantly obvious purchased recantation. Third, plaintiff's spontaneous statement was fully and fairly litigated. His spontaneous statement to Gillen is corroborated by his outbursts at the hearing and trial and the surrounding facts. Fourth, Ms. Walker's testimony that the murderer could have been Kareem, was exactly that, her own. Nothing the officers did forced her to say that, in fact, the evidence shows that she back-pedaled when she saw plaintiff in the courtroom. See Defendants 56.1 St., ¶ 124 (Upon seeing Ms. Walker enter the courtroom, Plaintiff said "Why are you doing this to me?"). Last, plaintiff

points to the "Anna Simmons" phone-call and investigation as fabricated.[12] However, this is conclusory and there is no evidence to support such an allegation of fabrication. Moreover, this additional investigation was not material to proving plaintiff's guilt.

## POINT VI

## PLAINTIFF CANNOT ESTABLISH A CLAIM AGAINST THE CITY OF NEW YORK

The question of whether the holding in Walker remains good law after Van de Kamp is unsettled. See Thompson v. Connick, 578 F.3d 293, 293-95 (5th Cir. 2009) (Jones, C.J., concurring) (listing 13 reasons why Van De Kamp's rationale applies equally to Monell claims and should thus apply with equal force). "Every reason advanced in Van de Kamp and Imbler for protecting the independence and integrity of prosecutors in trial-related actions and supervision suggests that holding a government entity liable in their stead for the same violations is simply untenable." Id. at 295. The prosecutors have immunity for the underlying violations alleged by plaintiff, Brady and summation remarks. Plaintiff and every other claimant could simply avoid Imbler and prosecutorial immunity by claiming a "policy." See Van de Kamp v. Goldstein, 555 U.S. 335, 347 (2009) ("the ease with which a plaintiff could restyle a complaint charging a trial failure so that it becomes a complaint charging a failure of training or supervision would eviscerate Imbler."). Notwithstanding the immunity loophole that has not been

[12] Plaintiff's allegations and suggestions of fabrication were known to plaintiff and used to examine the witnesses at the 440 hearings in 2007 and 2008. Thus, plaintiff had until 2011 to file this claim, but failed to do so until March 1, 2012. See Defendants' 56.1 St., ¶ 2. Accordingly, plaintiff has a statute of limitation problem with respect to his claims of fabrication.

specifically addressed by the Circuit post-Van de Kamp, Plaintiff's Monell claims fail for the numerous reasons set forth below.[13]

### A. The Alleged Failure to Provide Impeachment Material Theory Fails

Plaintiff fails to address the elements of a Brady claim because he cannot meet any of them. Plaintiff cannot show that the evidence was material and would have changed the outcome of the trial. The jury heard that Ms. Sanchez was relocated, received $50 by the DA's office at the time she testified and was getting paid $25 per day. See Defendants' 56.1 St., ¶¶ 92-94. This information was elicited by the prosecutor and was not suppressed. Plaintiff's criminal attorney argued that Ms. Sanchez was not credible and only testified she was threatened in order to get paid $25 per day. Id. at ¶¶ 144, 145. Plaintiff now has the hindsight of arguing that the total amount received by Ms. Sanchez was $2,800, but at the time, no one knew how long she would stay in witness protection or what the total would be. Plaintiff previously made this argument and it was rejected. See Bellamy I, 2008 N.Y. Misc. LEXIS 4672, at *21-23.

Plaintiff makes it seem like getting threatened, being removed from one's home and placed in a motel against one's will is a benefit. He also argues that these "benefits" would have undermined the threat report. However, the threat was corroborated by plaintiff's actions on the day he was picked up by the detectives. See Defendants' 56.1 St., ¶ 103 (Ms. Sanchez saw plaintiff on the other side of Beach Channel Drive pointing and yelling in her direction).

[13] Plaintiff's reliance on People v. Bedi, (unreported) and People v. Steadman, 82 N.Y.2d 1 (1993) are misplaced. In Bedi, a threatened witness denied receiving expense money while on the stand and the ADA failed to correct the witness' false testimony resulting in a Rosario violation. Here, Ms. Sanchez accurately testified to relocation and receiving expense money. The witness protection program was not even at issue in Steadman. There, an ADA, not the trial prosecutor, made an agreement with an eyewitnesses' attorney that the eyewitness would not face prison time on a pending charge if he testified at trial against Steadman. Id. at 5. The promise of leniency was never divulged to the trial prosecutor or to Steadman's lawyers. Id. at 6.

Plaintiff's other arguments are couched with the phrases "reasonable to infer" and "adverse inference," which show that the claim rests on pure speculation. Finally, the representations made to the Court during the 440 were accurate: The promise was to keep Ms. Sanchez safe, the safeguard that there was no quid pro quo, and they provided her with $25 a day for living expenses for being taken from her home. Id. at ¶¶ 88-94. In sum, this claim is baseless and only alleged as an effort to pressure Defendants into burdensome, costly and harassing discovery.

**B. The Alleged Improper Summation Theory Fails**

A litigant cannot take one route during the criminal matter and then have a blank slate for the civil action and throw the kitchen sink at the Court. Put simply, if there actually was summation misconduct it would have been included in the appeal and the habeas petition. Plaintiff admits that this argument was not made during the criminal appeals and habeas petition (see Defendants' 56.1 St., ¶ 168) and thus, the issue is waived and cannot be "relitigated" here. In Bristol v. Nassau Cnty., Your Honor precluded plaintiff from relitigating the voluntariness of his statements to law enforcement where plaintiff had a full and fair opportunity to litigate the issue but failed to challenge the state court's decision on appeal. 2016 U.S. Dist. LEXIS 63034, at *19-21 (E.D.N.Y. May 12, 2016) (Donnelly, J.). There too, the plaintiff's conviction was vacated, he was granted a new trial and collateral estoppel applied. Id. at *9, 20-21.[14]

In opposition, plaintiff cites to Jovanovic v. City of N.Y., which provides another reason for dismissal of this claim. 2010 U.S. Dist. LEXIS 144388 (S.D.N.Y. Sept. 28, 2010),

[14] Plaintiff's argument that he was unable to assert a § 1983 claim for summation misconduct in his criminal matter is ridiculous. Plaintiff could have argued summation misconduct as part of his criminal appeal or habeas petition and it did not have to be asserted pursuant to § 1983. See Bristol, 2016 U.S. Dist. LEXIS 63034, at *17-18 ("issue preclusion 'precludes a party from relitigating … an issue … whether or not the tribunals or causes of action are the same.'") (citations omitted).

aff'd, 486 Fed. App'x 149 (2d Cir. 2012). The decisions of the criminal trial judge to overrule objections to alleged prosecutorial misconduct constitute a superseding cause of any alleged harm to plaintiff, breaking the chain of causation for Section 1983 liability purposes. Id. at *50-51 (citing Wray v. City of New York, 490 F.3d 189, 193-94 (2d Cir. 2007) and Townes v. City of New York, 176 F.3d 138, 147 (2d Cir. 1999)). As a result, the trial judge's decisions overruling objections to the summation and allowing the prosecutor's remarks to be made to the jury constituted a superseding cause of plaintiff's alleged harm.

Plaintiff also cannot show substantial prejudice. "Rarely are comments in a prosecutor's summation 'so prejudicial that a new trial is required.'" U.S. v. Germosen, 139 F.3d 120, 128 (2d Cir. 1998), cert. denied, 525 U.S. 1083 (1999) (citation omitted). "Moreover, where, as here, the defendant did not object to the remarks at trial, reversal is warranted only where the remarks amounted to a 'flagrant abuse.'" Id. (citation omitted). Plaintiff listed nine statements that do not amount to flagrant prejudice: Statements 7, 8 and 9 are acceptable responses to the defense summation concerning credibility; (see U.S. v. Newton, 369 F.3d 659, 682 (2d Cir. 2004) (finding that prosecutor's comments of, "[t]hey came in here and told … the truth" and "[t]hese are credible witnesses" did not constitute improper vouching)); Statements 4 and 6 are acceptable responses to defense counsel's argument that the identifications were somehow unreliable; Statement 5 is an acceptable response to the argument that the People have the burden of disproving alibi; and Statement 3 is an acceptable response to the argument concerning no proof of motive.

Statement 2 was acceptable because it argued that the evidence showed plaintiff was the murderer and the jury should convict him based on the evidence. See Toro v. Herbert, 01-CV-3386, 03-MISC-0066 (JBW), 2003 U.S. Dist. LEXIS 22600, at *16 (E.D.N.Y. Sept. 29,

2003) (where prosecutor, among other things, referred to defendant as a cold-blooded murderer during summation, "none of the prosecutor's remarks was sufficiently egregious - whether in isolation or when accumulated - to have denied petitioner a fair trial"). Plaintiff speculates that "this time" means he has been charged with other murders, but ignores that this time, this trial, the evidence shows plaintiff is the murderer. With respect to statement 1, even assuming ADA Guy used the first person pronoun, it does not require a new trial. See U.S. v. LaMorte, 950 F.2d 80, 83 (2d Cir. 1991) (holding reversal not warranted where improper prosecutor's comment that "you don't think the government is busy enough prosecuting crimes that it has the time to be prosecuting innocent people, going after people arbitrarily?").

Plaintiff nit-picks the prosecutor's lengthy 42 page summation word by word. Within the lengthy summation that involved an analysis of the trial evidence, the challenged comments did not play a substantial role in the summation, much less the entirety of the trial. See Miller v. Barkley, 03 Civ. 8580 (DLC), 2006 U.S. Dist. LEXIS 4801, at *6 (S.D.N.Y. Feb, 8, 2006) ("The prosecutor's statements were brief and not a significant part of the State's argument or summation."). Plaintiff cannot meet the extremely high burden of substantial prejudice.

Even if there was prejudice, it was harmless. Taken in the context of the entire trial, plaintiff cannot show that a conviction would not have followed absent the prosecutor's summation. Plaintiff was convicted based on his own incriminating statements made to the police and to Ms. Sanchez, his spontaneous statements made at the suppression hearing and during the trial, the testimony of Ms. Sanchez and Mr. Carter, as well as their line-up identifications and the in-court identifications of plaintiff as the perpetrator. Plaintiff cannot show that his conviction was caused by ADA Guy's summation.

## POINT VII

## THE IIED CLAIM IS DUPLICATIVE AND FAILS ON THE MERITS

Intention infliction of emotional distress is a gap-filling cause of action that does not fill any gaps in this case because plaintiff's malicious prosecution and due process claims completely address his allegations and purported recovery. Plaintiff fails to address this point and his silence must be construed as recognition that the IIED claim is duplicative of the malicious prosecution and due process claims. Instead, plaintiff cites to two cases that are distinguishable. Newton, a motion to dismiss decision not one for summary judgment, involved a plaintiff who was exonerated by a rape kit whereas here, plaintiff has *not* been exonerated. Bender v. City of New York, an outlier, involved an allegation that an officer bit the plaintiff and, as discussed in Defendants' original moving papers, the Second Circuit questioned "whether the state courts would entertain an emotional distress claim in addition to the other torts alleged in this case." 78 F.3d 787, 791-92 (2d Cir. 1996).

Moreover, the conduct at issue was not utterly atrocious and beyond all bounds of decency. Ms. Sanchez stands by her identifications of plaintiff as the perpetrator and Mr. Carter only recanted after receiving money. See Defendants' 56.1 St., ¶¶ 49, 96, 171-77, 178. A finding of probable cause to prosecute (see Point I herein) precludes a finding of outrageousness beyond all bounds of decency. See Carey v. City of Mt. Vernon, 09 Civ. 3191 (JSR), 2010 U.S. Dist. LEXIS 98235, at *19 n.10 (S.D.N.Y. Sep. 10, 2010) (plaintiff's IIED claim "fail[ed] in light of the … probable cause for [his] arrest and prosecution") (citation omitted).

## POINT VIII

## THE FOURTEENTH AMENDMENT CLAIM IS DUPLICATIVE AND FAILS

Plaintiff admits that his Fourteenth Amendment claim is duplicative, but reserves his right to assert malicious prosecution claims pursuant to the Fourth and Fourteenth Amendments pending the outcome of the Supreme Court's decision in Manuel v. Joliet, 590 Fed. App'x. 674 (7th Cir. 2013). Only the Seventh Circuit does not recognize a section 1983 claim for malicious prosecution, whereas the Second Circuit and nine other circuits agree that a Fourth Amendment malicious prosecution claim is cognizable. The binding precedent before this Court is that a malicious prosecution claim is rooted in the Fourth Amendment (see Murphy v. Lynn, 118 F.3d 938 (2d Cir. 1997)) and the Fourteenth Amendment claim fails as duplicative.

## CONCLUSION

For the reasons set forth in Defendants' original moving papers and herein, Defendants respectfully request that the Court grant their motion for summary judgment, dismiss the claims set forth in plaintiff's Complaint, and deny plaintiff's cross motion, together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
July 27, 2016

ZACHARY W. CARTER
Corporation Counsel of the
City of New York
*Attorney for Defendants City of New York, John Gillen and Michael Solomeno*
100 Church Street
New York, New York 10007
(212) 356-2331

By: /s/
Matthew J. Modafferi
Senior Counsel

TO: Thomas Hoffman, Esq. (By ECF and First Class Mail)
*Attorney for plaintiff*
5 Columbus Circle at 1790 Broadway, 6th Floor
New York, New York 10019

12-CV-1025 (AMD)(PK)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Kareem Bellamy,

Plaintiff,

-against-

City of New York,
John J. Gillen,
Michael F. Solomeno,
John Doe 1 and John Doe 2, Supervising Officers at the NYPD 101st Precinct,

Defendants.

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION**

***ZACHARY W. CARTER***
*Corporation Counsel of the City of New York*
*Attorney for Defendants City of New York, John Gillen and Michael Solomeno*
*100 Church Street*
*New York, New York 10007*

*Of Counsel: Matthew J. Modafferi*
*Tel: (212) 356-2331*

*Due and timely service is hereby admitted.*

*New York, New York* ........................................, *2016.*

.............................................................................., *Esq.*

*Attorney for* ..................................................................