**LAW OFFICES OF THOMAS HOFFMAN, P. C.**

37 Elaine Terrace, Yonkers, NY 10701 - (212) 581-1180

May 8, 2019

**BY ECF**
Honorable Peggy Kuo
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re: *Kareem Bellamy v. City of New York, et al.*, 12-CV-1025 (AMD)(PK)**

Your Honor:

I am an attorney for Plaintiff Kareem Bellamy. I write jointly with Assistant Corporation Counsel Joshua L. Lax, Esq., counsel for Defendants City of New York, James J. Gillen, and Michael F. Solomeno, pursuant to the Court's orders, dated April 22, 2019 and May 6, 2019, directing the parties to submit a joint letter regarding the status of discovery and any discovery disputes. In this letter, the parties set forth their positions separately.

## I. Areas of Agreement

**By Plaintiff:**

The parties have continued to confer regarding the remaining discovery related to Plaintiff's two *Monell* claims concerning the Queens District Attorney's Office. Aside from those exceptions noted in Section II below, the City does not plan to make broad-based objections to categories of documents requested in Plaintiff's Third Request for Interrogatories and Document Production. (Ex. 1.) Defendant does, however, need to analyze some of the materials case by case for safety and privacy interests, law enforcement interests, and other privileges.

Regarding the Failure to Discipline Claim, the City has agreed to produce *Monell* depositions and the *Monell* discovery produced in two other lawsuits against the Queens District Attorney's Office: 1) *Shih Wei Su v. City of New York*, No. 06-cv-687 (RJD) (CLP) (E.D.N.Y.); 2) *Benitez v. City of New York*, No. 17-cv-3827 (SJ) (SJB) (E.D.N.Y.). With regard to the *Su* and *Benitez* discovery, the parties have agreed to be bound by the protective order agreed to by the parties to *Su* and *Benitez*. Plaintiff and Defendant will be submitting a stipulation to that effect tomorrow.

Regarding communications between members of the Queens District Attorney's Office (Request No. 15), counsel has ascertained further information about the logistics

of an email search. As a result, Plaintiff will send the City proposed email search terms by Friday, and the parties will seek to agree on email search terms within the next week.

The parties have made minor progress regarding Plaintiff's second *Monell* claim, namely that the Queens District Attorney's Office had a policy, practice or custom of not disclosing financial or housing assistance for cooperating witnesses in the Witness Security Program ("WSP") (also referred to as the Witness Protection Program ("WPP")). The parties refer to this claim as Plaintiff's WSP *Brady* Claim.[1] One area of agreement is that Plaintiff has agreed to hold off on his request for the Queens District Attorney's Offices responses to Freedom of Information Law ("FOIL") requests seeking discovery of benefits given to WSP witnesses (Request No. 7).

**By Defendants:**

Defendants do not refer to this claim as the "WSP *Brady* Claim." In fact, defendants do not believe that some of this information qualifies as true *Brady* material, and as this is not germaine to any discussion of the issue in this submission, question why plaintiff inserted this comment here, the first draft of which was provided to defense counsel at 6:03 p.m. today. Further, the parties' confidentiality and protective order in this matter already contemplates that all witness protection material can be designated as confidential, may not be used for any other purpose other than presenting this case, and must be destroyed or returned at the conclusion of this case. (See Docket Entry No. 50).

## II. Areas of Disagreement

a. Discovery concerning the disclosure or non-disclosure of benefits received by testifying WSP witnesses

**By Plaintiff:**

As indicated, the main area of disagreement concerns Plaintiff's WSP *Brady* Claim. Plaintiff wishes to impose deadlines for production, which Defendant has thus far resisted. A brief summary of Plaintiff's claim and relevant discovery requests may help to clarify this disagreement.

Plaintiff claims that the Queens District Attorney's policy, practice or custom of not disclosing financial or housing assistance for cooperating WSP witnesses prevented Bellamy's trial prosecutor from knowing about or disclosing the promises his Office made to a crucial prosecution witness, Linda Sanchez. On January 29, 2019, the U.S.

---

[1] In fact, Defendant objects to this term, which Plaintiff had intended as an agnostic and inoffensive shorthand. Plaintiff drafted for "the parties" anticipating that this section of the letter would be authored jointly, with all content subject to both parties' approval, just as Defendant drafted much of the joint letter submitted to the Court on April 19, 2019. We apologize for the confusion. Plaintiff did not exchange his portions of the draft until 6:03, and Defendant did not exchange their portions until 6:58.

Court of Appeals for the Second Circuit held that Plaintiff had raised a material issue of fact as whether the non-disclosure of benefits to Sanchez violated his Fair Trial Rights, and further held that the City could be held liable for the alleged policy of the Queens District Attorney's Office that caused this violation. *Bellamy v. City of New York*, 914 F.3d 727 (2d Cir. 2019).

To prove his WSP *Brady Monell* claim, Plaintiff seeks records from other cases as to what WSP witnesses received (or were promised) as well as records concerning whether there was disclosure or, as in Bellamy's case, non-disclosure. In order to find out what testifying WSP witnesses have received, Plaintiff has requested ledgers of payments and the witness security file of each WSP witness who testified from 1993 through 1998 because the WSP files contain records of financial and housing assistance. (Request Nos. 1, 2.) Plaintiff has also requested records concerning whether the financial and housing assistance received by testifying WSP witnesses was disclosed, including *Brady/Rosario* letters to defense counsel and transcripts of on-the-record disclosures, the examination of the WSP witness, and the parties' summations. (Requests Nos. 4-6.)

In Plaintiff's view, Defendant is moving far too slowly and will not produce discovery in a timely manner absent reasonable Court-ordered deadlines. Plaintiff asks the Court to so order the following interim discovery deadlines:

- By May 20, 2019, Defendant must produce a list of cases—the case name, indictment number and docket number—for the years 1995, 1996 and 1997 in which a WSP witness testified;

- by May 24, Plaintiff must select from this list 30 cases for which Defendant must produce discovery concerning the WSP *Brady* claim;

- For these 30 cases, Defendant must produce the WSP file and responsive documents from the case file in three installments of approximately 10 cases each on June 10, June 24, and July 8.

- After July 8, the Court and parties can assess whether further discovery concerning the WSP files and corresponding case files is or is not necessary.[2]

[2] As Defendant makes clear below, Defendant objects that Plaintiff did not discuss this exact proposal with Defendant, who has categorically refused to agree to any deadlines for producing WSP files and responsive portions of case files. But Plaintiff's current proposal is even more lenient than Plaintiff's prior similar compromise offer, emailed to Defendant yesterday, under which Defendant would be required to produce discovery for 15 WSP cases by June 3, 2019, with another 15 files two weeks later, and another 15 files two weeks after that. Now we are proposing an extended deadline and fewer files. Plaintiff has been trying to compromise with Defendant for some time and practically begged for a counter-proposal. Because we were holding out for one, the situation was fluid until this afternoon. It is surprising that Defendant finds fault with the fact that, in

A brief history of *Monell* discovery may help to explain the need for interim, Court-imposed deadlines. On August 18, 2015, the City agreed in a so-ordered stipulation to proceed with *Monell* discovery in exchange for Plaintiff's withdrawal of a sanctions motion based on discovery delays. Dkt. 112. The stipulation dictated that Plaintiff would serve *Monell* discovery requests and interrogatories by August 31, 2015, and that the City would respond by October 15, 2015. Plaintiff timely served discovery requests seeking virtually all of the discovery now requested. Defendant did not respond until January 8, 2016 and, even then, produced no documents concerning Plaintiff's WSP *Brady* Claim except for files from one case, *People v. Bedi* (discussed further below) as well as ledgers of witness payments that were plainly unintelligible due to redactions. Defendant produced no documents relating to the disclosure or non-disclosure of witness benefits and simply refused to respond to Plaintiff's Second *Monell* Discovery Request, served on January 29, 2016. On February 19, 2016, Plaintiff filed a motion to compel virtually all of the discovery now at issue. Dkt. 139. Defendant opposed Plaintiff's motion to compel, largely on the basis that the Queens District Attorney's Office had not comitted any constitutional violations that would justify *Monell* discovery. Dkt. 143.

However, as noted, on January 29, 2019, the Second Circuit ruled otherwise. On April 4, 2019, after conferring with defense counsel, Plaintiff submitted a letter to the City enclosing an amended, pared down list of *Monell* discovery requests based almost entirely on prior *Monell* discovery requests. Plaintiff asked Defendant to "indicate whether you accept this letter as an updated discovery request or whether we should send you a formal, amended discovery request as well." On April 19, 2019, after conferring with Defendant, Plaintiff sent a formal, amended *Monell* discovery request identical in substance to the April 4 letter.

Accordingly, by June 10, Defendant will have had two months to begin complying with discovery requests first made in 2015. Furthermore, Plaintiff is only requesting production for 10 cases on June 10 and approximately one case per weekday through July 8. Accordingly, Plaintiff asks the Court to impose the above deadlines for production concerning Plaintiff's WSP *Brady* Claim. In short, Plaintiff believes the requested deadlines are fair and reasonable and asks the Court to impose them.

**By Defendants:**

At the outset, defendants note that defendants themselves are interested in using the discovery called for under the label of "Witness Protection Program." Defendants submit that in the ultimate reckoning plaintiff will be unable to show that the handling of witness security measures by investigators separate from the trial assistant did not cause repeated deficiencies in constitutionally required disclosures, nor were investigators

---

the interest of moving things forward, we have proposed a discovery schedule that places a lesser burden on the Queens District Attorney's Office.

purchasing testimony through the offer of these measures. This discovery ought to aide defendants in that task.

The dispute involved on this discovery is primarily one of timing. To that end, defendants have been open with plaintiff's counsel regarding the logistical challenges presented by this discovery request. Following initial discussions between counsel, the parties agreed to focus on witnesses who participated in the witness security program from 1993 to 1998, and who ultimately testified at a trial. As noted above, the files for witness security are maintained separate from the case file of the assigned prosecutor. The witness security files are maintained by a detective investigator in the QCDA. They exist only in paper form. Because secrecy and protection of these records is of significant concern to keep safe the witnesses who testified against the particular defendant, access to these paper files is heavily restricted. In fact, defense counsel's liaison within the QCDA had to obtain clearance to work with these files.

The QCDA determined that there are 272 files for witnesses receiving security measures between 1993 and 1998. The next step in the process involves looking in each paper file to determine which prosecution is associated with that witness, and then look up the case in a database to determine whether a trial was held. Once that process is complete, the next step is to request each case file for the cases where the witness may have testified at the trial. This process requires each file, and each file could range in volume between multiple red wells to multiple boxes. Neither the witness security files, nor the case files from this time period, are electronic; all exist in paper form with varying degrees of organization. Those files must be transmitted from the archives where they are stored, and reviewed to determine whether the witness who participated in the security program testified at trial. In addition, due diligence must be conducted to determine the status of the witness and the defendant to determine what security issues remain. The file must also be reviewed to determine what if any responsive documents may be included in the file, copied, and transmitted to defense counsel. Furthermore, if there was an acquittal, documents from that file will be protected by N.Y. C.P.L. § 160.50. Defense counsel must next review the materials and prepare them for production. During this process appropriate redactions must be made, and any necessary privilege log needs to be created. The QCDA also expects that the handling of the materials by defense counsel needs to account for the safety and sensitivity of these files within their offices.

The QCDA is currently working through the 272 files to determine which cases are associated with which witness and which cases had trials. Counsel had hoped this process would be farther along at this point, but intervening events have delayed the process. The liaison agency counsel and the detective who maintains the files have been absent at times during the Easter and Passover holiday week, and at other times for personal obligations. In addition, both have obligations within the office beyond those related to the discovery in this case. For example, the work may get interrupted by emergent motions, subpoenas, or requests for documents. The detective may be called to leave the office at a moment's notice to address an unrelated issue involving a witness. In fact, this week the detective had a personal family issue arise which will likely result in

several days out of the office, and the agency counsel is now seeking to have a replacement investigator assigned to this project. The QCDA has hundreds of pending FOIL requests and document requests from other agencies, including for cases handled by defense counsel's office. For these reasons, this first stage in the process is delayed. Notwithstanding, the undersigned was advised that provided another detective investigator could be assigned to the project, analysis of how many case files need to be ordered would hopefully be completed around May 21, 2019.

The schedule proposed by plaintiffs is inappropriate under Rule 26(b)(1). Defendants first note that plaintiff proposed that fifteen case files be produced by June 1, 2019, with another 15 files two weeks later, and another 15 files two weeks after that. That was plaintiff's proposal as of lunchtime, today, May 8, 2019. The above schedule was first proposed to defense counsel at 6:03 p.m. this evening, after business hours when defense counsel would have difficulty conferring with the QCDA. Nonetheless, the same challenges to plaintiffs prior proposal remain in this new proposal. As described above, the process to prepare a production on each file within the QCDA, assuming there are responsive documents in each file, could take at least several hours. Thus, once any files are received from archives, itself a time consuming process, an attorney working full time on these files would only be able to get through two to three files a day, assuming no other interruptions. Thus, it could take five business days alone to prepare a batch of ten files before they reached defense counsel. As noted, redactions and a privilege log (though that may not be necessary depending on the circumstances), would also need to be created in conjunction with the QCDA.

The burden and expense of following this schedule, in conjunction with the resources of the QCDA, far outweighs the other considerations under Rule 26 for fashioning an appropriate schedule. As the comments to the 2015 amendments to Rule 26 note, "The burden or expense of proposed discovery should be determined in a realistic way." Plaintiff suggests that the Court should force the QCDA to devote personnel to work full time on discovery in this matter. This suggestion is without regard to legitimate considerations of the limited resources of a municipal agency, and the realities attendant to unearthing paper materials from up to twenty-six years ago. A further consideration is the net-benefit to plaintiff. The reality of this case is that the City is immune from punitive damages, and the question is whether the City is jointly and severally liable with the individuals if a jury concludes plaintiff suffered a deprivation based on the actions of both the officers and the trial assistant. Thus, the expense and burden of litigating this claim far outweighs the monetary benefits if plaintiff prevails on the Monell claim.

A further issue with plaintiff's proposed schedule is that defense counsel is commencing a trial before the Honorable Eric N. Vitaliano on June 10, 2019. Plaintiff's counsel is aware of this trial, in part because they have some interest in that case as Mr. Rudin submitted an amicus brief in the appeal of the Court's summary judgment opinion, and the case involves a QCDA investigation. Because preparation of this trial will be underway before June 1, 2019, defendants would have significant difficulty complying with the scheduled proposed by plaintiff's counsel. As noted, plaintiff's counsel moved

the first date for production from June 1, 2019 to June 10, 2019 in their proposal at the last possible moment.

Plaintiff also makes much of the fact that he requested some of these materials in 2015. That ignores the fact that defendants made appropriate objections at that time, and there was pending motion practice that was unresolved at the time summary judgment was granted by the Court. Thus, plaintiff's suggestion that discovery should have some way continued throughout the summary judgment motion and appeal has no basis.

Defendants further note that at the suggestion of plaintiff's counsel, the parties requested in their application last week a status conference where further scheduling could be discussed, which is now scheduled for June 14, 2019. Defendants respectfully request holding any interim schedule in abeyance until that time, when more information about the volume of case files to be ordered will be known and the parties will have greater information about the logistical issues present in this issue.

Though not mentioned in plaintiff's portion of this submission, the Witness Security materials are contemplated in the parties' confidentiality and protective order that was entered in 2014. (See Docket Entry No. 50). Defendants intend to produce any of the materials discussed herein pursuant to that order.

Finally, defendants note that to the extent Monell discovery threatens to further delay a final resolution of this matter, defendants are willing to proceed to trial on the individual factual issues to allow plaintiff and defendants a faster opportunity to get the case in front of a jury. Any trial in this matter would necessarily involve asking the jury to determine whether the actions of both the individual defendants and the trial assistant caused plaintiff to suffer a deprivation of a constitutional right, but could proceed without the question of whether the QCDA had a policy or practice. Plaintiff opposes this solution for what defendants believe are strategic reasons and must accept that Monell discovery could be time consuming.

b. Documents and communications from *People v. Bedi*, No. 4107/96, NYLJ 1202592836531 (N.Y. Sup. Ct. Mar. 13, 2013)

**By Plaintiff:**

Defendant objects to Plaintiff's discovery request seeking documents and communications in the *Bedi* case relating to the disclosure or non-disclosure of benefits to the testifying WSP witness in that case. (Request No. 17.) In *People v. Bedi*, No. 4107/96, NYLJ 1202592836531 (N.Y. Sup. Ct. Mar. 13, 2013), the Office defended a 2000 homicide conviction, even though the trial prosecutor had failed to correct a key witness's false testimony denying knowledge of the benefits he received, because, as a matter of policy, the WPP concealed records of such payments from trial prosecutors. The D.A.'s Office, many years after conviction, had been forced to disclose 18 receipts signed by the witness showing direct cash payments to him of nearly $4,000, as well as

his receipt of more than $16,000 in hotel benefits. In vacating the conviction, the state court pointed out that, had timely disclosure occurred, the defense could have argued that the payments were nothing more than an "inducement … to testify," since the witness was not in fear and, after testifying, was cut loose with no more "protection." *See Bedi*, NYLJ 1202592836531.

Plaintiff had anticipated that Defendant would submit objections to Request No. 17 as well as a privilege log, which would serve as a basis for a motion to compel. It now appears Defendant will not serve a privilege log. Regardless, Plaintiff will file a motion to compel production relating to the *Bedi* case that is responsive to the arguments below, which, like Plaintiff's portions of this letter, was first exchanged this evening.

**By Defendant:**

As an initial matter, defendants note that the request at issue, as with all of plaintiff's most recent discovery demands, were not formally served on defendants until they were mailed on April 20, 2019, and thus, defendants' formal objection and response is not yet due, nor is the issue ripe for the Court's ruling. As defendants understand this request, plaintiff is only seeking materials reflecting communications between the Assistant District Attorney who handled the trial in People v. Bedi, Indictment No. 4107/96, and the prosecutors who defended the motion to set aside the judgment in that case, and any executives working for the District Attorney. The trial in that matter occurred in February 2000, and the post-conviction motion was decided in 2013.[3] The motion was litigated by Joel B. Rudin, Esq., who is serving as an adviser to the counsel of record here, one of which is his associate.

In Bedi, the Queens County District Attorney (QCDA") provided housing and meals to an eyewitness to a murder as part of the witness security program. At the trial, summaries of those expenditures were identified, but the full record of those expenditures was not disclosed until a FOIL request several years later. At trial, the witness denied that the QCDA had paid for a hotel room for him at some point during the pendency of the case. Although the prosecutor disclosed the fact a hotel room was paid for, the summary did not indicate it was for the particular witness or provide a record that the witness knew who paid for the room. Further, the QCDA attorneys defending the post-conviction motion stated in an affirmation to the trial court that: 1) Witness Security Program records are maintained by investigators in their office and are not made part of the trial assistant's litigation file; and 2) the trial assistant in Bedi did not have the Witness Security documents in her folder and did not know that the eyewitness had signed receipts for the expenses paid in his favor.

Plaintiff's request regarding Bedi seeks communications amongst the QCDA personnel. Defendants object to this request and submit that they should not have to respond to this request beyond their objections for several reasons.[4] For purposes of this

[3] Upon information and belief, the defendant later pleaded guilty to manslaughter.

[4] Defendants outlined this position to plaintiff in telephone conference on May 6, 2019.

letter, defendants identify their primary objections. First, this request appears to call for privileged information in seeking communications between attorneys about what the legal position the QCDA should take in regards to whether the trial assistant had an obligation to turn over this material or not, both at the time she prosecuted the homicide and when the QCDA litigated the post-conviction relief. Plaintiff also seeks communications between attorneys regarding their legal position in the FOIL request and subsequent proceeding. This material would be protected by the work product privilege. S.E.C. v.Yorkville Advisors, LLC, 300 F.R.D. 152, 159 (S.D.N.Y. 2014). These materials may also qualify for the deliberative process privilege. Brennan Ctr. For Justice at NYU Sch. Of Law v. U.S. Dep't of Justice, 697 F.3d 184, 194 (2d Cir. 2012).

Further, the search for the documents responsive to this request is inappropriate. These communications are not relevant to any party's claim or defense and proportional to the needs of the case. Plaintiff's Monell theory regarding witness security is that by having investigators provide and arrange for witness security measures separate from the trial assistant, the protocol lead to deficient pretrial disclosures and quid pro quo bargaining with witness. Defendants deny that such behavior occurred. Nonetheless, the position taken by the QCDA in the Bedi proceedings would appear to be all that is needed here. The communications would add nothing to support plaintiff's position where the QCDA acknowledged that the trial assistant in Bedi did not have all the records, nor did the trial assistant know the extent of the expenditures made for the witness. Further, some disclosures had in fact been made in that case regarding witness security. From there, plaintiff has enough information to make his arguments in support of his Monell claim. Thus, the burden and expense of the proposed discovery outweighs its likely benefit when one considers the information already known by the parties in regard to disclosures of witness security measures in the Bedi case.

The parties thank the Court for its consideration.

Respectfully submitted,

/s/

Jonathan Hiles

cc: All counsel **(By ECF)**