UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


KAREEM BELLAMY, et al.,          *      Case No. 12-CV-1025(AMD)
                                 *
                                 *
                Plaintiffs,      *      Brooklyn, New York
                                 *      January 22, 2021
      v.                         *
                                 *
CITY OF NEW YORK, et al.,        *
                                 *
                Defendants.      *
                                 *
  *   *   *   *   *   *   *   *   *   *   *   *   *   *


          TRANSCRIPT OF CIVIL CAUSE FOR MOTION HEARING
               BEFORE THE HONORABLE PEGGY KUO
               UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiffs:              ILANN M. MAAZEL, ESQ.
                                 EARL WARD, ESQ.
                                 MARISSA BENAVIDES, ESQ.
                                 Emery Celli Brinckerhoff Abady
                                  Ward & Maazel LLP
                                 600 Fifth Avenue
                                 New York, NY 10020

                                 JOEL B. RUDIN, ESQ.
                                 Law Offices of Joel B. Rudin
                                 Carnegie Hall Tower
                                 152 West 57 Street
                                 New York, NY 10019

For the Defendants:              JOSHUA J. LAX, ESQ.
                                 New York City Law Department
                                 100 Church Street
                                 Rm 3-154
                                 New York, NY 10007


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.


**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

```
1              (Proceedings commenced at 1:30 p.m. )

2              THE COURT:  This is a motion hearing in the matter

3    of Kareem Bellamy vs. City of New York, et al., docket no. 12-

4    CV-1025, Magistrate Judge Peggy Kuo presiding.

5              Will the parties please state their appearances,

6    starting with the plaintiff.

7              MR. MAAZEL:  Good afternoon, Your Honor.  Ilann

8    Maazel for the plaintiff, Kareem Bellamy.

9              MR. WARD:  Good afternoon, Your Honor.  Earl Ward

10   for the plaintiffs.

11             MS. BENAVIDES:  Good afternoon, Your Honor.  Marissa

12   Benavides, also for plaintiffs.

13             MR. RUDIN:  Good afternoon.  Joel Rudin for

14   plaintiff.

15             MR. LAX:  For defendant City of New York, Michael

16   Solomeno, and John Gillen, I am Joshua Lax.  Good afternoon.

17             THE COURT:  All right.  Good afternoon, everyone.

18             So there had been a motion -- originally for a pre-

19   motion conference on the motion to amend but I think the

20   parties wanted to -- my understanding is the parties want to

21   just to go the heart of the matter, the motion to amend, and

22   so I wanted to give the parties an opportunity today to talk

23   about that.

24             If you could give me a moment, I had a little bit of

25   trouble opening all the documents, but please just bear with
```

1    me while I pull everything up so that I'm looking at the

2    appropriate documents before you get started.

3        (Pause.)

4        So why don't I start with the plaintiff and then you

5    can tell me what you're attempting to accomplish here and then

6    I'll hear from Mr. Lax.  Okay?

7        MR. MAAZEL:  Thank you, Your Honor.  This is Ilann

8    Maazel for the plaintiff.

9        So we are here on a motion to amend filed by the

10   plaintiff.  This is a motion to add a new *Monell* claim against

11   the City of New York. And the motion arises from discovery

12   that we engaged in in November and December of 2020.

13       So just to step back for a moment, we obviously have

14   a number -- Section 1983 claims against the individual

15   defendants and -- as well as *Monell* claims against the

16   defendant City.

17       What we learned that was new in the depositions in

18   November and December was important information that we felt

19   merited an additional claim.

20       So we already had a claim related to the summation

21   misconduct.  We had a claim related to the witness protection

22   program.

23       But what we learned from Mr. Schwartz, the number

24   two in the Queens District Attorney's Office, and what we

25   learned from Mr. Castellano, the 30(b)(6) witness from the

4

1    City, is that there were at least some 58 decisions from the

2    Second Department and other courts before 1996 finding

3    arranged prosecutorial misconduct in the office.

4            And we learned that the QDAO was aware of those

5    decisions at the highest levels and we learned that they took

6    no action to fix any of those problems.  They changed no

7    policy.  They changed no procedure.  They didn't discipline

8    anyone.  They didn't investigate.  They didn't change their

9    evaluations.  They didn't change the way they supervised.

10   They didn't change their hiring practices.

11           They had really a broad based deliberate

12   indifference to prosecutorial misconduct in the office,

13   including the very types of conduct that we are at issue in

14   the Bellamy case, such as *Brady* violations and summation

15   misconduct. So this was significant information to us.

16           Just as a matter of timing we in August of 2020

17   filed our 3(b)(6) notice with the City, or served our 30(b)(6)

18   notice on the City, to discuss the City's response to that

19   memo collecting information about prosecutorial misconduct in

20   the office.

21           The City moved to quash part or all of the 30(b)(6)

22   notice.  We had a lot of back and forth with the City, both

23   before we went to the court and then before the court.  Your

24   Honor allowed that 30(b)(6) notice to proceed and that

25   deposition to proceed and we did.  We then deposed Mr.

1    Castellano on behalf of the City.

2            On December 1st, 2020 -- we received the transcript

3    from that deposition on December 9th and within a few days we

4    had drafted our amended -- or our proposed amended complaint,

5    sent that to the City.  Asked them whether they would consent

6    to filing, they did not consent and that's what led to the

7    premotion conference and now this motion.

8            I just want to make a couple of points on the law

9    here.  The first, of course, is as we all know leave to amend

10   a complaint is liberally granted.  That's the first point.

11           The second point is that there's really no prejudice

12   at all to the City here.  We're not adding any new defendant.

13   We're not seeking any new discovery.  We need no new discovery

14   based on this claim.

15           This will not affect the expert discovery schedule,

16   which is proceeding at pace.  It will not affect the trial

17   schedule.  In fact, we reached an agreement with defense

18   counsel to file the pretrial order sooner than we previously

19   anticipated.

20           So there won't be any delay.  There won't be any new

21   defendant.  And the City's papers state that they don't view

22   this as a new claim.

23           And if that is true -- I don't agree with that, but

24   if that is true, there's certainly no prejudice to the City

25   for adding new information that simply supports the claims

6

1    that we have.

2            So we would suggest that the motion to amend be

3    granted.  We cite a number of cases to the court.  It's not

4    unusual at all to amend pleadings at the end of discovery

5    absent some significant prejudice to the defendant and we

6    cited the *Keinig* (ph) case and the *Purdy* (ph) case and the

7    *J.P. Morgan* case and a number of other cases.

8            Again, we believe that this is a motion supported by

9    evidence we learned relatively recently.  We worked as

10   diligently and promptly as we could to propose an amended

11   complaint based upon that testimony.

12           We provided that to the defense as soon as we

13   possibly could, really within days of receiving the transcript

14   of that second critical deposition, and there's no prejudice

15   at all really to the City.

16           And so we would just ask that the motion be granted,

17   that the claim be part of the case and we proceed pursuant to

18   the existing schedule in the case, including the pretrial

19   order and ultimately trial.

20           THE COURT:  Can you explain what the necessity is

21   for you to have this information in an amended complaint?

22           MR. MAAZEL:  Sure.  So the existing claims -- the

23   existing *Monell* claims, one of them focuses on summation

24   misconduct exclusively.  The other focuses on the witness

25   protection program exclusively.  And those claims, of course,

1    were upheld by the Second Circuit.

2              This claim is broader and it's based on the

3    testimony we learned, which is that it wasn't simply that the

4    City or really the QDAO was deliberately indifferent to

5    submission of conduct.  It wasn't simply that they had no

6    policy procedure to share witness protection information with

7    the (indiscernible) ADA or with the defense.

8              It was a broader deliberate indifference to

9    prosecutorial misconduct in the office, the scope of which

10   really exceeds what's in our other claims and the scope of

11   which was unknown to the plaintiff. I mean, this was certainly

12   known to the defense throughout the case but it was unknown to

13   the plaintiff.

14             And so it's a claim that focuses not just on the

15   more narrow issues of summation misconduct and the WPP

16   program, but also on the overall deliberate indifference to

17   prosecutorial misconduct in the office, which is important

18   because that overall indifference to really all sorts of

19   different types of misconduct was, we believe, a substantial

20   factor or proximate cause of the decisions made by Mr. Guy in

21   this case which led to Mr. Bellamy's conviction and

22   imprisonment.

23             THE COURT:  Okay.  So I heard a couple of different

24   things and I just want to get clarification.  You said the new

25   claim is -- you're saying the existing claim is deliberate

1    indifference to summation and deliberate indifference to

2    witness protection procedures, right?

3              MR. MAAZEL:  Broadly speaking, yes.

4              THE COURT:  Okay.  A new thing that you're adding is

5    also deliberate indifference but to broader categories of

6    misconduct, not just summation and witness protection but

7    other things.  You said all sorts prosecutorial misconduct.

8    Is that right?

9              MR. MAAZEL:  That's correct, Your Honor.

10             THE COURT:  Okay.  So it's still deliberate

11   indifference, but it's the area to which they're deliberately

12   indifferent go beyond summation of witness protection.

13             MR. MAAZEL:  That's true.  Exactly.

14             THE COURT:  Okay.  But how would you describe those

15   additional areas that they're deliberately indifferent to?

16             MR. MAAZEL:  Well, we cite a number of examples in

17   the complaint and it's -- I mean, it's every type of

18   prosecutorial misconduct -- well, not everything, but --

19             THE COURT:  I know, but I'm just trying to figure

20   out beyond summation and witness protection, what is it that

21   they're -- what's the misconduct that they're deliberately

22   indifferent to.  Not how, right, because you described how by

23   not disciplining and things like that --

24             MR. MAAZEL:  Sure.

25             THE COURT:  -- but what misconduct are you talking

1    about?

2            MR. MAAZEL:  So the conduct included misconduct in

3    openings.  Misconduct in cross examination.  *Rosario*

4    violations.  I believe *Molineux* violations.

5            THE COURT:  I'm sorry.  What?

6            MR. MAAZEL:  *Molineux*.  Maybe I'm mispronouncing it.

7    M-O-L-I-N-E-U-X.

8            THE COURT:  I don't know what that is.

9            MR. MAAZEL:  Those are violations to using prior

10   acts of -- when a prosecutor can and cannot use prior bad acts

11   --

12           THE COURT:  (indiscernible) the evidence.

13           MR. MAAZEL:  Yes.  Roughly.

14           So it's sort of wide ranging misconduct.  And our

15   point is --

16           THE COURT:  Those are the categories you're talking

17   about?

18           MR. MAAZEL:  Those are some of them.  I mean, I --

19           THE COURT:  I'd like to know the universe of it.

20           MR. MAAZEL:  All right. I'm just going through our

21   proposed --

22       (Pause.)

23           So some of the examples we cited include -- you

24   know, do include summation misconduct.  Do include *Brady*

25   violations.  Also include disregarding court rulings. Limiting

1    unfairly prejudicial evidence.  Improper cross examination

2    questions.  I'm just going through some of the examples, Your

3    Honor, and I don't think this was an exhaustive list because

4    we didn't want to write every single example of them.

5              THE COURT:  Well, you certainly came close to it

6    because it's quite extensive so I -- it surprises me that

7    you're saying you weren't being exhaustive.

8              MR. MAAZEL:  We didn't, for example, list every one

9    of the 58 plus cases.  I think we listed --

10             THE COURT:  At the trial you're going to bring all

11   of this up?  Because if you're alleging it, I assume you're

12   trying to prove it, right?  Usually you put things in a

13   complaint because you're intending to prove it.

14             MR. MAAZEL:  Sure.

15             THE COURT:  So you're going to prove all of these

16   things.  That's your intention.

17             MR. MAAZEL:  Well, there's no dispute about these

18   violations.  These are all holdings by --

19             THE COURT:  Okay.  So then why do they need to be in

20   the complaint?  I'm just very confused about what you're

21   trying to do here which is why I opened by asking you what

22   you're trying to achieve.

23             MR. MAAZEL:  What we would like to show the jury,

24   demonstrate to the jury, is that there was a wide range of

25   known prosecutorial misconduct within the office, known at the

1    highest levels of the office, A.  And B, deliberate

2    indifference to that misconduct.  And --

3              THE COURT:  Okay.

4              MR. MAAZEL:  And various  (indiscernible).

5              THE COURT:  Yes.  And so the deliberate indifference

6    you've already pled and you've been doing extensive discovery

7    on that and it's with regard to the things that actually

8    happened -- that you've alleged happened in this case with

9    regard to Mr. Bellamy, which led to a wrongful conviction and

10   violation of his civil rights, or his constitutional rights

11   with the summation of the witness protection and -- you

12   mentioned *Brady*.

13             I don't know if it fits into those but I'll just --

14   why don't I just say *Brady* as a separate category.  Okay.  So

15   three things are already in the complaint and you've been

16   doing a lot of discovery in that area, which is why I

17   permitted in your recitation of what's being asked for I

18   permitted that discovery.

19             So the question for me now is -- there are a couple

20   of different questions.  One is the list of things that you

21   said are additional, prosecutorial misconduct, opening

22   statements, cross examination, prior acts, disregard of court

23   rulings, don't appear to be things that you alleged happened

24   in Mr. Bellamy's case, correct?

25             MR. MAAZEL:  That's true.  Some of those things did

1    not happen in this case.  That's correct.

2              THE COURT:  Well, none of those, because you didn't

3    plead it originally.  And I assumed that you've scoured the

4    record in his trial and if any of these happened, you would

5    have brought it up.

6              So if you didn't bring it up, I'm assuming that

7    those things did not happen at his trial, correct?

8              MR. MAAZEL:  Our claims about what happened in the

9    Bellamy case specifically are not different by

10   (indiscernible).

11             THE COURT:  Right.  And so if you're going to say

12   that the Queens D.A.'s Office was a total miss and they're

13   disregarding all kinds of prosecutorial misconduct, examples

14   of which affected your client's case, you already are in a

15   position to do that because you can argue what happened in

16   your client's case and you can argue the *Monell* part, which is

17   the background, which is that the office didn't do anything

18   that could have helped your client avoid these problems.

19             And so to bring in all this other information into

20   the complaint I am just very confused as to how the trial is

21   going to happen when the jury has to read this extensive

22   complaint, because that's what they'll have to do as part of

23   their deliberations, and go through it say basically what the

24   heck.  What are we deciding here?  I thought this trial was

25   about Mr. Kareem Bellamy.

1          And I just don't know what is accomplished either

2     for your client or for your case by adding all this

3     distracting, perhaps -- well, I will say unnecessary detail to

4     the complaint.  And that's why I asked you because I thought I

5     might be missing something.

6          Why does this need to be in a complaint?  Why can't

7     it just be part of the case that you may be able to present,

8     if Judge Donnelly allows it, to support your existing *Monell*

9     claims, which are already quite broad and specifically talk

10    about Kareem Bellamy's trial. And some of it could be -- you

11    know, there's stipulations that certain things happened.  And

12    that's it.  And you could present your case that way.  Am I

13    missing something?

14          MR. MAAZEL:  Well, adding this claim will ensure

15    that the jury hears the full sweep and scope of the deliberate

16    indifference of this office.  And --

17          THE COURT:  But I assume they're going to hear that

18    anyway because you've got all this information.  And if you

19    could convince Judge Donnelly that you should be able to

20    present this information to support the claim about the *Monell*

21    claim about the deliberate indifference for the prosecutorial

22    misconduct that occurred in your client's case, then you get

23    to present what you need to to prove your case.

24          MR. MAAZEL:  My point, Your Honor, is simply that

25    there's different types of misconduct engaged on a systemic

1    basis by the office that led to the breakdowns that occurred

2    in Mr. Bellamy's case.

3            And they're not all the same.  There are different

4    ways -- there are different practices of the office, there's

5    different policies to the office that led to this wrongful

6    conviction.  And we're already pled two of them.  But they

7    aren't the only practices, policies and customs that led to

8    what happened here.

9            And certainly we're entitled, I believe, to plead

10   more than one *Monell* claim in a given case.  And here there is

11   a broader policy/practice in the office that was a proximate

12   cause of the constitutional violations in this case and --

13           THE COURT:  Well, if that's the case, why wouldn't

14   it be enough for you just to amend it to say summation,

15   witness protection, Brady and other types such as opening

16   statements, cross examination, (indiscernible), disregard of

17   court ruling?

18           MR. MAAZEL:  In short, just add all of those

19   allegations to the existing claims as opposed to a new claim?

20           THE COURT:  So the complaint -- it's a document of

21   allegations. I'm just asking -- I haven't heard from Mr. Lax

22   yet, right, so I'll hear from him, but I'm just -- there's a

23   lot of detail here.

24           And that's the question -- that's really the heart

25   of my question is why are you throwing all of this detail into

1    this document that's basically a pleading document?

2            MR. MAAZEL:  Sure, and it's -- you know, it is a

3    long complaint.  It's certainly not the longest complaint I've

4    seen.  But that reflects the sweeping nature of the

5    allegations.

6            THE COURT:  Yeah, but this case -- this is what -- I

7    know Judge Donnelly has expressed her concern on the record as

8    to where this trial is going because it feels like Mr. Kareem

9    Bellamy is getting lost in all of this.  That the case gets

10   broader and broader and becomes a bigger and bigger indictment

11   of the system, of the office of the -- whatever it is and that

12   may play a role in what happened to him.

13           But really the heart of the matter is what happened

14   to him and the heart of the trial should be focused on what

15   happened to him.

16           And so there's just a real concern that the more

17   that gets thrown into the pleadings, the more the trial is

18   going to spin away from this human being at the heart of the

19   case.

20           This is just my question and, of course, like I

21   said, I will ask Mr. Lax to jump in and I'll hear what he has

22   to say.

23           But I wanted to understand from you what the reason

24   was that you're making this request because I didn't see it

25   upon review of what you've given me and I thought that I might

16

1    be missing something.  So let me hear if you have anything

2    else to say before I turn to Mr. Lax.

3              MR. MAAZEL:  I would just say that I don't see

4    addition of this claim really expanding the length of the

5    trial in any remotely substantial way.

6              I mean, I think it's quite likely that the 30(b)(6)

7    witness will be a witness at trial.  Quite likely that Barry

8    Schwartz, the number two in the office, will be a witness at

9    the trial and testifying about various claims in the case.

10             So there will be very efficient ways for us to

11   present this evidence to the jury and we certainly feel it's

12   in Mr. Bellamy's best interest for the jury to hear the

13   evidence supporting this *Monell* claim, which ultimately is a

14   claim that will -- if he prevails will provide him relief.

15             So we strongly believe that this does help Mr.

16   Bellamy's case and it is important to Mr. Bellamy's case and

17   it is relevant to the jury's deliberations.

18             MR. RUDIN:  Your Honor, this is Joel Rudin.  Might I

19   add something?

20             THE COURT:  Go ahead.

21             MR. RUDIN:  The existing complaint does not as

22   explicitly as would be desirable allege that a failure to

23   discipline *Brady* violations generally led to the *Brady*

24   violation that occurred in this case.

25             And we made an effort before Judge Donnelly decided

1    the motion to -- for summary judgment or as to the *Monell*

2    claim to dismiss to make it clear that that was the

3    plaintiff's theory.

4            And we conducted a great deal of discovery on that

5    theory but the complaint hasn't been amended to make crystal

6    clear that even though the Second Circuit noted that that

7    theory is being pursued by plaintiff it's not clearly within

8    the four corners of the complaint.

9            And in addition to that the -- you know the Supreme

10   Court has made clear in *Conick v. Thompson* and the circuit

11   courts have made clear that you don't have to have exactly the

12   same constitutional violation to give notice to the

13   municipality that there's a defective policy or practice and

14   to establish a claim of deliberate indifference.

15           And essentially the courts have upheld the theory

16   that the failure to discipline or to take remedial measures

17   against misconduct generally will create a winning at all cost

18   atmosphere that will lead to the kind of specific violations

19   that occurred in a particulars case.

20           So that part of what this amendment accomplishes is

21   to make clear that he large number of misconduct cases that

22   are collected in that 1996 memorandum and the indifference of

23   the office in various different ways to their knowledge about

24   that misconduct created an atmospheres and a policy -- and

25   shows that there was a policy of deliberate of indifferent

18

1     that existing at the time of the Bellamy trial that led David

2     Guy to commit the specific acts of misconduct that he

3     committed.

4                   He might have committed other acts of misconduct.

5     These happen to be the ones that he committed in this case

6     because all he cared about was winning and he knew there'd be

7     no consequence to him if he committed the *Brady* violation, if

8     he committed the summation misconduct.

9                   And so I understand Your Honor has raised the

10    question about whether or not this amendment is too detailed.

11    I think the reason for it is that the testimony that we

12    received that Mr. Mazel elicited very recently is very, very

13    dramatic.

14                  Here you have a report that the highest levels of

15    the office asked for that documented this misconduct that he

16    had been found by the appellant courts in New York over, and

17    over, and over again from the late 1980's until 1995 and at

18    the beginning of 1996.  They're obviously aware of the

19    misconduct and now it's all collected for them and they do

20    nothing.  They don't change any of their practices or

21    policies.

22                  And so that -- one can infer from that indifference

23    that the same atmospheres and policy and deliberate

24    indifference existed around the time of the Bellamy trial and

25    it's broader than holding back $2,800 of undisclosed benefits,

1    or whatever the amount is that this witness was promised. And

2    it's broader than the exact acts of summation misconduct that

3    happened to occur in this case.

4            And so I think that's the reason why we would like

5    to have the complaint be clearer so that the City cannot come

6    back at the time of trial and say well, the existing complaint

7    from 2012, if it's still the operative complaint, doesn't say

8    anything about the failure to discipline *Brady* violations and

9    it doesn't explicitly say that there was an atmosphere -- a

10   winning at all cost atmosphere that was created by the failure

11   to take any steps against any prosecutorial misconduct

12   resulting in violations of the constitutional rights of

13   criminal defendants.

14           So I think it's important for us to be able to have

15   a document that makes clear what our theory is and so there

16   isn't a problem at trial where the City can raise an argument

17   that certain proof should not be allowed because the operative

18   complaint doesn't make crystal clear that it's part of our

19   theory.

20           THE COURT:  And where in your amendment, or proposed

21   amendment, do you make it crystal clear?

22           MR. RUDIN:  Well, the --

23           THE COURT:  In the hundred paragraphs that you're

24   proposing to add, where does this become crystal clear?

25           MR. RUDIN:  In the amended complaint that is added –

1   - in the cause of action that's added to the complaint that is

2   around -- I mean, is built around the testimony about the --

3           THE COURT:  Tell me which paragraph so I can read

4   it.

5           MR. RUDIN:  I don't have it.  Maybe Mr. Maazel can

6   do it. I don't have it in front of me but it alleges that

7   there was widespread prosecutorial misconduct --

8           THE COURT:  I know.  I'm sorry, Mr. Rudin.  I know

9   that's what you're saying but I'm looking for the crystal

10  clear argument, the crystal clear statement of your expanded

11  theory.

12          You propose adding a hundred paragraphs to your

13  complaint and so I'm asking you to point me to where it is.

14          MR. RUDIN: Well, I don't --

15          MR. MAAZEL:  I have it in front of me, Your Honor.

16  And of course it really is throughout the claim.  But if we

17  were to pick --

18          THE COURT:  Yeah, but this is the problem, right?

19  You're saying crystal clear but it's not crystal clear because

20  it's lost.

21          MR. MAAZEL:  Well, I --

22          THE COURT:  Before you do that, because you might

23  need a moment, I'm looking to see whether the *Brady* violation

24  is alleged. I had the sense that the *Brady* violation was

25  alleged -- it certainly was alleged in a way that was clear

21

1    enough for the Second Circuit, as you pointed out, to say that

2    you had alleged it.

3             So I'm looking to see again through your red line

4    where it is that you've now added a clear reference to the

5    *Brady* violation issue.

6             MR. MAAZEL:  If I could start with Your Honor's

7    first question. So I think if you just start with paragraph

8    405. And so this is a straight forward paragraph that makes

9    clear the breadth of the deliberate indifference here.

10            THE COURT:  So paragraph 405 is the one where you

11   say the City admitted certain things in the 30(b)(6)

12   deposition.

13            MR. MAAZEL:  Yes.  That's right.  That the City --

14            THE COURT:  That is a -- okay.  Hold on a second.

15   This is in your statement of facts.  This is not in a claim.

16            MR. MAAZEL:  No, this is in the claim.

17            THE COURT:  Okay. I'm sorry. I'm looking to see

18   where.  Claim to *Monell*, the policy and practice, custom of

19   prosecutorial misconduct, right?

20            MR. MAAZEL:  Yes.

21            THE COURT:  Claim two. Yes.  Okay.

22            And so you're saying paragraph 407 recites certain

23   facts.

24            MR. MAAZEL:  Paragraph 405.

25            THE COURT:  405.  Yes.

22

```
1              MR. MAAZEL:  So paragraph 405 lists in simple terms

2     what we learned in the 30(b)(6) deposition.

3              THE COURT:  Right.  Those are the failed to take

4     certain actions.

5              MR. MAAZEL:  Yes.

6              THE COURT:  Okay.  And then where's the expanded --

7     you said that the original complaint said summation

8     violations, witness protection issues and Brady.  And now you

9     want to add and other misconduct but the 405 doesn't contain

10    misconduct.  405 contains a list of failures to act.

11             MR. RUDIN:  Your Honor, paragraph 397 does it very

12    clearly.

13             THE COURT:  397.  Okay.  Let me take a look at 397.

14             Extensive history.  These individuals have extensive

15    history of prosecutorial misconduct. I'm sorry.  The office

16    had prosecutorial misconduct.  Okay.

17             MR. RUDIN:  And then it's followed by 398.

18             THE COURT:  Okay.  So it strikes me that -- and it

19    struck me while I was reading this that you, as Mr. Rudin

20    said, have this very dramatic report and you want to make sure

21    the jury hears of the content.

22             Are you saying that without the amendment you

23    wouldn't be able to introduce the report to the jury?

24             MR. MAAZEL:  We would certainly -- if we were stuck

25    with our existing complaint, we would make every argument we
```

23

1    could do before the jury.

2              But having this claim would make plain that it

3    should be before the jury.

4              THE COURT:  Well, but maybe you don't have to go

5    that far.  Have you tried to see if you could stipulate to

6    portions of the complaint, or the introduction of information

7    in the report?

8              If that's your goal, again, going back to my

9    original question, if your goal is to put this very dramatic

10   report before the jury, is there another way to do it other

11   than amending the complaint with a hundred new paragraphs?

12             MR. MAAZEL:  Well, we have twin goals, Your Honor.

13             One is to make sure the evidence is before the jury

14   and the second is to make sure the claim is before the jury;

15   it's own separate claim, because this is an important claim

16   that if we prevail will vindicate Mr. Bellamy's rights.

17             THE COURT:  Yes.  Okay.  All right.  Mr. Lax, you've

18   been waiting patiently.  Let me hear from you.

19             MR. RUDIN:  Your Honor, paragraph 4 --

20             THE COURT:  I'm sorry. Somebody was speaking.  I

21   can't --

22             MR. RUDIN:  Paragraph 401 makes the causation very

23   clear between the types of misconduct that we would like to

24   have in the case, clearly in the case, and the causation of

25   constitutional violations that occurred in this case.  The

1      link has made very clear.

2              The rest of it is detail that we would like in the

3      complaint but at the very least we need to have clear the

4      theories under which the evidence would be admissible.

5              Otherwise no doubt the City's going to try to

6      drastically limit our proof to the 2012 complaint which is not

7      a model of draftsmanship.

8              THE COURT:  All right.  Mr. Lax?

9              MR. LAX:  Thank you, Your Honor.

10             I'll note first of all going back to the operative

11     complaint, these dramatic statements that they're now pointing

12     to paragraph 401, 397 in their revised proposed complaint, the

13     basic premises are all in their operative pleading and,

14     frankly, we have been doing discovery about all of this.

15             Like I'm not -- all of the things that Mr. Rudin and

16     Mr. Maazel are saying about the nature of their complaints,

17     I've not heard anything surprising because I knew that one,

18     they were going to suggest -- I knew based on -- taking

19     everything, the entire record altogether that they were going

20     to be alleging deliberate indifference.

21             And I was aware that they were going to say that not

22     just in summation, or with *Brady* but with everything there

23     wasn't sufficient training, because that's the way they took

24     the depositions and that's the way they prosecuted discovery

25     in this case. All of that happened and it's been clear.

25

1      So this idea that they now suddenly need to add a

2   hundred or whatever paragraphs to the complaint to make things

3   clear, it's just simply not true.  It's all there.

4      And I think what crystalizes the point is that when

5   this case went up on appeal after summary judgment was granted

6   by the district court, Mr. Rudin put in his brief a

7   description of what the *Monell* claim was.  And I'll read it if

8   the court would like me to. It's on page 47 to 48.

9      And it says, "Beyond challenging the so called

10  Chinese wall policy, Bellamy alleges that the *Brady* violation

11  and summation misconduct in this case also resulted from the

12  longstanding deliberate indifference of the D.A. as the

13  personnel manager of his office through rampant and

14  constitutional violations, proven not only by the existence

15  and persistence of the Chinese wall," which is in quotation

16  marks," policy but also by the failure of the D.A. to properly

17  train and supervise and discipline the offending prosecutor."

18      The complaint alleges that 65 appellate decisions

19  were issued condemning such misconduct in the tenured

20  proceeding of the Bellamy trial and that a further 72

21  decisions were issued through 2012 when the complaint was

22  filed.  Yet none of the responsible prosecutors were

23  disciplined.

24      So previously before this amendment was requested

25  plaintiff was quite clear that all of this was in the

1    operative pleadings.  And so now the argument's being advanced

2    that somehow it's sufficing.

3            It's not sufficient.  This amendment falls squarely

4    within the cases that say that once you have a clear and

5    concise statement of what your claim is about, amending to

6    embellish and embroider details of things that are really

7    meant for the jury is impermissible.

8            And I think that that point is borne out by our

9    discussion because when one considers plaintiff's arguments

10   this afternoon and what they really were talking about, is

11   they were really talking about relevance issues as it relates

12   to evidence.

13           There is no allegation that I'm aware of either

14   through the course of discovery and my (indiscernible) in this

15   case or by the proposed amendment that a new theory of

16   underlying constitutional misconduct occurred, be it an

17   improper opening, and improper cross examination.  Improper

18   misuse of *Molineux*, or disregarding *Molineux* rulings, or

19   (indiscernible).

20           None of that is -- (indiscernible).  So all this is

21   I think is a pitch to get some of this in front of the jury.

22   The case law is clear though that this is not the forum or the

23   context with which one does it.

24           And then putting us through the burden of sifting

25   threw all this discovery to respond to this complaint has been

1    found to be prejudicial.

2          We then now -- I mean, there's just a generalized

3    prosecutorial misconduct delivered in different claims being

4    thrown out there.  That is going to be subject to further

5    motion practice.

6          I mean, it does expand the work on the case and it

7    doesn't really add anything because there are really motion

8    sin limine issues about whether, you know, a decision by the

9    Second Department of the State of New York in X year is

10   evidence of like the improper training when X prosecutor

11   violated the New York State standard for G type of conduct.

12         I mean, that's the -- those are evidence questions.

13   They're not necessarily a pleading question.

14         I mean, I'll say just generally I don't agree with

15   all the representations that have been made about the

16   (indiscernible) but I don't think that's really germain to our

17   discussion here today.

18         So I thinK the court has a right, and the court's

19   initial inclination that (indiscernible) are necessary is

20   correct because it is. It doesn't add anything in terms of

21   just inflammatory discussions about the D.A.'s office which

22   whatever the motive is, it's just, again, it relates to

23   evidence not claims.

24         THE COURT:  All right.  So thank you, everybody for

25   your input.

1          MR. RUDIN:  Your Honor, may I add one thing in

2     reply.

3          THE COURT:  Who's speaking, please?

4          MR. RUDIN:  Mr. Rudin.  Joel Rudin.

5          THE COURT:  Yes.  Go ahead.

6          MR. RUDIN:  The problem -- I mean -- as Mr. Lax

7     pointed out I handled the Second Circuit appeal and we pointed

8     out in a footnote that while we had made it clear to the

9     district court that we were pursuing a claim of the failure to

10    discipline *Brady* violations, and that was part of our theory

11    and we argued it that way, and the Second Circuit noted that

12    that theory was -- that was one of our claims, if one looks at

13    the way the complaint is drafted, while there are factual

14    allegations in the factual part of the complaint that talk

15    about training and discipline generally for misconduct, the

16    way the actual causes of actions are drafted is you have one

17    cause of action that is entitled failure to discipline

18    summation misconduct, and then there's another cause of action

19    that's entitled witness protection -- that makes reference to

20    the deficient witness protection program.

21          But the broader theory that Mr. Lax seems to be

22    conceding is in the case, and I'm glad that he's conceding

23    that it's in the case and he's understood it all along, it

24    still isn't spelled out in our complaint as clearly as we

25    would like it to be so that there isn't any question going

1    forward.

2            And the paragraphs that I referred Your Honor to

3    earlier are -- stand alone without the factual material that

4    is in the proposed amendment and make it clear what Mr. Lax is

5    saying is in the case, but which is not as clearly stated in

6    the operative complaint as it might.

7            And so while I think it's important -- we, of

8    course, would like the factual material that's in the proposed

9    amendment to be allowed, at the very least we would ask that

10   the paragraphs that make the legal theory clearer, and which

11   Mr. Lax concedes is not a surprise to him at all be permitted.

12           MR. LAX:  Your Honor, if I could have one very final

13   brief point?

14           THE COURT:  All Right.

15           MR. LAX:  It's simply this.  That we seem to have

16   broad agreement on this call and on this hearing that there is

17   no surprise to the City.

18           And I would suggest that under the unanimous case

19   law, when there's no surprise to the City there's really no

20   basis to oppose amending the complaint.

21           We all apparently seem to understand what the basic

22   claims are and what the basic facts are and we are supposed to

23   be the masters of our own complaint as to plaintiff and we

24   believe that this is important to add as a claim.

25           And since there's really no dispute that there's no

1     prejudice here at all to the defense we would suggest that

2     leave be liberally granted to amend and we just proceed under

3     the new complaint.

4               THE COURT:  I heard Mr. Lax say there is prejudice

5     to the defendant in having to respond to file an answer to a

6     complaint like this.

7               And even though your theory as you've described it

8     and summarized it may not be a surprise to anybody and sure,

9     in the first instance you can file a complaint as you wish, a

10    complaint or an amendment, a proposed amendment like this does

11    start to look like you're skirting any ability of the trial

12    judge to rule on motions in limine on each of these points to

13    weigh whether, in fact, it's fact relevant or not.

14              And so it's not as simple as you've set out to say

15    that there's a -- whatever you want to do with the complaint

16    you should be allowed to as along as it doesn't hurt -- as

17    long as it's no surprise to the defendant, I simply don't

18    accept that.

19              So I know the parties need to move forward on this

20    and so I'm prepared to rule on your proposed amendments and I

21    will start with what you've said, Mr. Maazel, about leave to

22    amend should be granted (indiscernible).

23              And so I've looked at your proposed amendment in

24    that light and I've looked at the timing of this, as well as

25    the prejudice to the defendant.

1          I don't find that the amendments are proper.  They

2   are not of the kind of information or allegations that belong

3   in a complaint.  They are more -- they are so detailed they

4   really are an attempt to make the complaint evidence itself.

5          And so I don't -- I just don't see the utility of

6   permitting this complaint and I do find that there's prejudice

7   because now that the defendant, as they should any time

8   there's a pleading, needs to answer each argument -- each

9   allegation that's presented and then figure out how to respond

10  to it legally as well as factually.

11         Now you may say, Mr. Maazel, well, this is evidence

12  that the defendants know about so what's there to deny?  They

13  should just admit everything.

14         But this is also a document that's going to be the

15  document that the jurors will be using to make their decision

16  and this goes far beyond placing allegations for the jury to

17  consider in terms of making their decision.  So I don't think

18  it's proper.

19         And then the last point is that as unhappy as you

20  may feel about the original complaint and Mr. Rudin's

21  characterization of it, as inartfully pled, it contains

22  everything you need in terms of the allegations.

23         And if there's anything beyond that that you want to

24  present to Judge Donnelly, you can certainly bring it up to

25  her and have her decide what is relevant to this case and what

1    isn't.

2              And if at that point you look back on this and say

3    well, if Judge Kuo hasn't let us amend, then we would be

4    talking differently in terms of what this trial would look

5    like.  You could ask her to reconsider my ruling today.

6              But I think at this late game -- this late stage of

7    the game and having had everybody move forward, including me,

8    on the assumption or the understanding that these were exactly

9    the issues that you were looking at, the amendments are both

10   unnecessary and prejudicial.

11             So the motion to amend is denied, except to the

12   extent that you've now fixed some of the -- deleted some of

13   the causes of action that were with the -- the motion for

14   summary judgment was upheld by the Second Circuit.

15             So I think it would be very useful for everybody to

16   use the clean copy of the amended complaint that only reflects

17   the amendment insofar as it takes out what has been dismissed

18   in the case.

19             So please go back and take a look at what that is

20   and that's the amended complaint. I'll permit that amendment

21   to go forward so the jury is looking at a clean document.

22             All right.  Anything else, Mr. Maazel?

23             MR. MAAZEL:  No, Your Honor.

24             THE COURT:  All right. Mr. Lax?

25             MR. LAX:  No, Your Honor.

33

1          THE COURT:  All right. Thank you, everybody.

2          MR. MAAZEL:  Thank you, Judge.

3      (Proceedings concluded at 2:07 p.m.)

4

5   I, CHRISTINE FIORE, Certified Electronic Reporter and

6   Transcriber, certify that the foregoing is a correct

7   transcript from the official electronic sound recording of the

8   proceedings in the above-entitled matter.

9

10

11   _____          January 25, 2021

12      Christine Fiore, CERT

13

14

15

16

17

18

19

20

21

22

23

24

25