# LAW OFFICES OF JOEL B. RUDIN, P.C.

CARNEGIE HALL TOWER
152 WEST 57TH STREET
EIGHTH FLOOR
NEW YORK, NEW YORK 10019

TELEPHONE: (212) 752-7600
FACSIMILE: (212) 980-2968
E-MAIL: jbrudin@rudinlaw.com

JOEL B. RUDIN
———
HARAN TAE
JACOB "COBY" LOUP
MATTHEW A. WASSERMAN

GEORGE R. GOLTZER
(OF COUNSEL)
SIDURI BECKMAN
(PARALEGAL)

March 28, 2021

**By ECF**
Honorable Peggy Kuo
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: *Bellamy v. City of New York et al.*
           12-cv-1025 (AMD) (PK)

Dear Judge Kuo:

    I am writing to request that the Court enter an order removing the "confidential" designation that Defendants have applied to the four pages of discovery material referred to in my letter of March 22, 2021, ECF No. 307, or at least as to the one-page memorandum written by then–District Attorney Richard Brown. Defendants oppose this request and also cross-move to seal the letter itself. We oppose this request. I will separately file a motion for leave to file the four-page document in question under seal.

### Plaintiff's position regarding the confidentiality designation

    The issues in the *Bellamy* litigation are of great public importance. They involve whether the elected Queens DA, over a long period of time, was deliberately indifferent to prosecutorial misconduct jeopardizing the constitutional rights of criminal defendants and risking that the true perpetrators of serious crimes would go free. *The New York Times* and other news organizations have reported on the vacatur of Mr. Bellamy's conviction after new evidence pointed to the culpability of the original police suspect,[1] the dismissal of the prosecution and Mr. Bellamy's release from prison after the vacatur was affirmed on appeal,[2] Mr. Bellamy's lawsuit and the Second Circuit appeal in which the municipal-liability and other claims were upheld,[3] and, more

---

[1] *See* Jim Dwyer, *After Years in Prison, Now a Break*, N.Y. Times, Aug. 5, 2008, https://www.nytimes.com/2008/08/06/nyregion/06about.html.

[2] *See* Christina Carrega-Woodby, *'Free to Resume Your Life,'* N.Y. Post, Sept. 17, 2011, https://nypost.com/2011/09/17/free-to-resume-your-life.

[3] *See, e.g.*, David Brand, *Prosecutorial misconduct lawsuits prompt depositions of Acting Queens DA, top prosecutors*, Queens Daily Eagle, Nov. 5, 2019, https://queenseagle.com/all/prosecutorial-misconduct-lawsuits-depositions-acting-queens-da-top-prosecutors; Colby Hamilton, *2nd Circuit Revives Federal Wrongful Conviction Challenge*, N.Y.L.J., Jan. 29, 2019, https://www.law.com/newyorklawjournal/2019/01/29/2nd-circuit-revives-federal-wrongful-conviction-challenge; Alan Feuer, *Holding Prosecutors Accountable Is Hard. It Could Get*

LAW OFFICES OF JOEL B. RUDIN, P.C.

Honorable Peggy Kuo
March 28, 2021
Page 2

recently, changes under a new DA, Melinda Katz, including the creation of a Conviction Integrity Unit.[4] Two weeks ago, a front page story in *The Times*,[5] and considerable coverage in other outlets, reported the Queens DA's agreement to vacate three 20-year-old murder convictions in the Bell/Bolt/Johnson case, and free the defendants, due to a *Brady* violation involving Brad Leventhal, currently the Chief of the Homicide Trial Bureau of the DA's Office, and Charles Testagrossa, formerly a Queens Executive ADA, who resigned a similar position at the Nassau County DA in the wake of these reversals. The judge who granted the reversals, the Hon. Joseph Zayas, wrote in a blistering opinion that the DA's withholding of evidence that a third party was responsible for the murder was deliberate—and in a death penalty case no less. *See People v. Bell*, No. 287/1997, 2021 WL 865420 (N.Y. Sup. Ct. Queens Cty. Mar. 8, 2021).

To my knowledge, multiple news organizations continue to investigate and report on past and present practices of the Queens DA's Office as these bear on the issue of wrongful convictions. One reporter, who is preparing a story for imminent publication, read my March 22 filing, recognized the importance to his story of the note by DA Brown that was quoted in that letter, and asked for a copy of the document itself, which Defendants had designated "confidential." I then wrote to Defendants' counsel Joshua Lax and asked for the City's position. He objected to disclosure, hence this application.

Under the confidentiality stipulation in this case, from 2014, *see* ECF No. 50, the only definition of "Confidential Materials" that the City could possibly cite here is the following: "Queens District Attorney ('QDA') personnel and disciplinary-related records; QDA training materials . . . ," *id.* at ¶ 2. Other provisions concerning the Queens DA concern witness protection program documents and witness information and thus do not apply.

Under the stipulation, it was wrong for Defendants to designate the document in question as confidential. DA Brown's note referred to a publicly-filed court decision and simply asked his Chief Assistant, John Ryan, to discuss with him how "to handle" the situation, followed by an observation about past practices in the office. Mr. Ryan then handwrote a memo which referred to a filing number and four apparent categories of information. The document was found, *not* in any personnel or disciplinary folder, but rather in some personal file evidently maintained by Mr. Ryan himself or his assistant. Indeed, the note was *not* placed in the ADA's personnel file, and deposition testimony revealed the ADA was never disciplined for his conduct in the case. The observation by Mr. Brown about past practices did not refer to discipline of this or any other ADA, but, evidently, to the *absence* of discipline. Nor is this a training document.

---

*Harder.*, N.Y. Times, Oct. 8, 2017, https://www.nytimes.com/2017/10/08/nyregion/holding-prosecutors-accountable-is-hard-it-could-get-harder.html.

[4] *See, e.g.*, Troy Closson, *Queens Prosecutors Long Overlooked Misconduct. Can a New D.A. Do Better?*, N.Y. Times, Jan. 27, 2021, https://www.nytimes.com/2021/01/27/nyregion/melinda-katz-queens.html.

[5] Troy Closson, *They Spent 24 Years Behind Bars. Then the Case Fell Apart.*, N.Y. Times, Mar. 5, 2021, https://www.nytimes.com/2021/03/05/nyregion/queens-wrongful-convictions.html.

Law Offices of Joel B. Rudin, P.C.

Honorable Peggy Kuo
March 28, 2021
Page 3

The purpose of keeping personnel documents confidential under the stipulation is not to protect the thoughts of executives in the DA's Office about office policy, custom, or practice, but rather to protect the privacy and perhaps the reputation of employees. Of course, that privacy interest is limited by the fact that ADAs are public employees whose prosecution of criminal cases *should* receive public scrutiny. Nevertheless, this particular ADA's privacy and reputation is not affected here because the document reveals only the DA's desire to discuss a public court decision with his top aide and an unusually candid thought about his own office's past practices.

That the DA's Office, or the City, purports to care about this employee's "privacy" is rich in irony. The City's attorneys know, from a deposition exhibit and deposition testimony, that Robert Masters, counsel to DA Brown, testified publicly about this ADA's history of misconduct before a state legislative committee studying whether to establish a Commission on Prosecutorial Misconduct, which Mr. Masters opposed. In that public testimony, Mr. Masters named the ADA, called him a "terrible lawyer," and acknowledged that "we advanced his career to handling cases he was not capable of handling," but claimed that somehow the office had learned from the experience and now, many years later, didn't need any outside oversight. Meanwhile, DA Brown himself publicly released a letter, years after the court decision cited in his memorandum, deploring the same ADA's conduct in another case. The ADA's history of misbehavior has also been extensively covered by the news media. The City's real concern appears to be with protecting the DA's Office from exposure of its history of indifference to prosecutorial misconduct. The City's attorneys disserve the public by trying to conceal information that the public has a right to know in overseeing the public servants whom they elect and employ.

Significantly, before I quoted from the belatedly disclosed document in my March 22 letter, my colleague emailed Mr. Lax as follows: "We … do not agree with your designation of D88702 to D88705 as 'Confidential.' Aside from [the prosecutor's] name, none of this information is even arguably entitled to confidentiality protection under the protective order. Unless we hear from you otherwise, we intend to use the document in our filing later today, not including [the prosecutor's] name." We then had an extensive email back and forth with Mr. Lax, before we filed our letter, but he did not object; he also did not object after we filed our letter, even though it quoted the Brown memorandum in full. Only concern with broader dissemination to a public that has a right to this information prompts the City's opposition to release of the document. But it is too late. The City's objection, however ill-founded, is waived.

"There is a 'strong, legitimate public interest . . . to have unfettered access to court proceedings, particularly when they involve elected officials and the performance of their governmental responsibilities.'" *Padberg v. McGrath-McKechnie*, No. CV-00-3355, 2005 WL 5190385, at *2 (E.D.N.Y. Apr. 27, 2005) (Gold, M.J.) (quoting *Flaherty v. Seroussi,* 209 F.R.D. 295, 300 (N.D.N.Y. 2001)). Further, "[i]n the absence of . . . a [Rule 26(c)] protective order, parties to a law suit may disseminate materials obtained during discovery as they see fit." *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543, 2015 WL 4522778, at *3 (S.D.N.Y. July 24, 2015) (Furman, J.) (quoting *Schiller v. City of New York*, No. 04–CV–7921, 2007 WL 136149, at *2 (S.D.N.Y. Jan. 19, 2007) (Francis, M.J.)). Thus, "if good cause is not shown, the

LAW OFFICES OF JOEL B. RUDIN, P.C.

Honorable Peggy Kuo
March 28, 2021
Page 4

discovery materials in question should . . . be open to the public for inspection." *Id.* To show good cause, Defendants must identify a "specific and serious injury" that will result from public disclosure; "the harm must be significant, not a mere trifle." *Laugier v. City of New York*, No. 13-CV-6171, 2014 WL 6655283, at *1 (S.D.N.Y. Nov. 24, 2014) (Furman, J.).

In accordance with these principles, numerous courts have refused to limit public access to pretrial discovery, particularly where, as here, matters of weighty public interest are involved. For example, in *Vazquez v. City of New York*, Judge Furman denied the City's request to make various documents confidential "in view of, among other things, the public interest in the subject matter of th[at] *civil rights litigation*, the extent and nature of what [wa]s already on the docket or in the public domain related to both the case and the parties, [and] the extent and nature of the existing media coverage of the case." No. 10 CIV. 6277, 2014 WL 11510954, at *1 (S.D.N.Y. May 2, 2014) (emphasis added). Similarly, in a case that "directly addresse[d] a matter of public interest regarding a Congressman's performance of his official duties," Judge Leisure refused to prevent the public disclosure of a video deposition, *see Condit v. Dunne,* 225 F.R.D. 113, 120 (S.D.N.Y. 2004); Magistrate Judge Gold refused to prevent the release of a video deposition of former New York City Mayor Rudy Giuliani, *see Padberg*, 2005 WL 5190385, at *2; and Judge Furman refused to restrict access to a video deposition where the deponent's "status as an appointed official, along with the pre-existing public interest in th[at] case, cut[] in favor of allowing public access," *Laugier*, 2014 WL 6655283, at *2. The same interests clearly weigh in favor of disclosure of the entire document in question here.

Since the City erroneously designated the DA Brown memorandum "confidential" and it does not even refer to any ADA by name, Plaintiff should be free to disclose that document, unredacted, to the media; the court decision to which it is attached, being public, also should be disclosed. As for Mr. Ryan's handwritten memorandum, there is no interest in redacting it just because it names a particular ADA; it is not a confidential personnel or disciplinary document simply because it refers to an ADA found by a state appellate court to have committed misconduct and already publicly identified by the DA's Office for his history of misbehavior over his career. Should the Court nevertheless believe the former ADA retains a confidentiality interest, then the document can be redacted to remove his name, the name of the court decision, and the decision. There is no conceivable basis to conceal the Brown memorandum itself.

**Defendants' Position in Opposition to Plaintiff and Cross-Motion to Seal Plaintiff's March 22, 2021 Letter**

Plaintiff's primary argument for removing the confidentiality designation of the documents at issue–his excuse for violating the parties' protective order--is that these documents are not covered by the protective order.  There is no support for this argument.  Further, the asserted interest in overriding the confidentiality is insufficient to permit plaintiff litigate this matter in the press.

LAW OFFICES OF JOEL B. RUDIN, P.C.

Honorable Peggy Kuo
March 28, 2021
Page 5

As initial matter, plaintiff's description of what these documents are is incorrect. The production consists of three items: 1) a note labelling the file containing the other items, listing in bullet-point format categories including the name and case of the assistant district attorney involved; 2) a handwritten note from the Honorable Richard Brown to Chief Assistant John M. Ryan (and the main document in dispute here); and 3) the appellate division decision to which the note appears attached. Plaintiff's interpretation (which is yet another violation of the party's protective order) is self-serving. Plaintiff gives the note the most negative gloss, as opposed to a fair reading where the district attorney was directing his chief assistant to look at the behavior and take remedial action for the employee or for training purposes.

Plaintiff contends that these items are not related to personnel or training records. This assertion ignores that the handwritten note and decision are amongst the exact type of documents that were regularly maintained as part of an assistant district attorney's personnel file. As plaintiff will acknowledge, personnel files produced in discovery regularly contain notes written on appellate decisions with instructions or comments for Mr. Ryan from District Attorney Brown. Plaintiff never objected to confidentiality designations of those other documents in this matter, or in the other matters where such documents have been produced. Moreover, plaintiff's further argument that the fact that these documents were not in an actual personnel file is inapposite. The documents at issue here are personnel records wherever they are found.

Similarly, plaintiff's conclusion that this note has nothing to do with training is overstated. The note itself may ultimately prove to be deliberative process material that led to training given further that year, 1998. Indeed, in defendants' view, the handwritten note from the head of the agency to a subordinate including a pre-decisional communication is protected by the deliberative process privilege. Notwithstanding this, defendants opted to waive the privilege because those documents were responsive to the plaintiff's document requests and defendants believe that the balance would favor disclosure. The waiver, however, was done in reliance on the protections against public disclosure afforded by the Confidentiality Stipulation and Protective Order.

Plaintiff also argues that there is no good cause for confidentiality of the disputed documents under Rule 26. "Good cause," however, has already been established by stipulation of the parties. By Order dated April 28, 2014, the Honorable Viktor V. Pohorelsky, approved the parties' jointly proposed Protective Order. (ECF No. 50). The Protective Order specifically covers the disputed records at issue here: "Queens District Attorney ("QDA") personnel and disciplinary-related records; QDA training materials. . . ." (ECF No. 50, ¶ 2). The Protective Order, which was agreed upon and signed by plaintiff's counsel, acknowledges that "good cause exists for the entry of an order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure." (ECF No. 50, at p. 1). The language of the Protective Order is consistent with those filed and adopted in countless other cases in this District, all of which provide that documents similar to the disputed records should be confidential. To the extent the documents at issue fall outside the Protective Order, good cause exists for maintaining confidentiality.

LAW OFFICES OF JOEL B. RUDIN, P.C.

Honorable Peggy Kuo
March 28, 2021
Page 6

As noted above, the deliberative-process nature of this record favors confidentiality because it meets the policy goals for that privilege: protecting pre-decisional communications between decision-makers and their subordinates to avoid a chilling of deliberations concerning important matters. See e.g. Noel v. City of New York, No. 15 CV 5236-LTS-KHP, 2018 U.S. Dist. LEXIS 209553, at *7-8 (S.D.N.Y. Dec. 12, 2018). Further, the parties have an agreement for defense counsel to investigate the files from which these records came further, and to discuss further issues related to discovery. To permit the release of this document now would permit a skewed public discourse and subject the individual officials and the Queens District Attorney to harm. The City is also entitled to a fair trial, now scheduled for October of this year, and permitting a skewed depiction in the months leading up to the trial deprives the City of a fair trial on the Monell claims.

Plaintiff also argues that public interests outweigh all other considerations. Public interest in a case, no matter how great, does not equate to a right to publicly disclose all documents exchanged by the parties in discovery. The Supreme Court has indicated that there is no "unrestrained right to disseminate information that has been obtained through pretrial discovery." Times Co. v. Rhinehart, 467 U.S. 20, 31 (1984). The weight given to the presumption of public access is determined by "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." United States v. Amodeo, 71 F.3d 1044, 1049 (2d Cir. 1995). Before any such presumption can attach, however, it must first be determined that the documents at issue are, in fact, judicial documents. "[T]he mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995). In order to be designated a judicial document, "the item filed must be relevant to the performance of the judicial function and useful in the judicial process." Id. The documents at issue here are not judicial documents. Thus, the presumption does not attach.

The logical end of plaintiff's argument regarding public interest would equate with no confidentiality for any document connected to any matter of public interest or to anyone plaintiff says should be subject to "public scrutiny." Further, plaintiff's account of the information already in the public realm concerning the assistant district attorney involved in the underlying decision, if accurate, demonstrates that such scrutiny has and is continuing to occur. Thus, the public interest in dissemination of this document now is insufficient overcome the parties' protective order and the confidentiality designation.

In addition to opposing plaintiff's request, defendants respectfully request that the Court seal plaintiff's March 22, 2021 letter (ECF No. 307) describing the exact contents of the confidential material. This submission violates the provisions and procedures of the Protective Order in this matter, and as a result, it should be sealed and refiled in redacted form. While plaintiff indicated his intention to use the confidential material, defendants understood plaintiff to want to file the documents as an exhibit to his letter. Counsel failed to respond in the back and forth on the issue of the production, but that lack of a response during the correspondence did not relieve plaintiff of his obligations to follow the terms of the protective order. Moreover, defendants'

Law Offices of Joel B. Rudin, P.C.

Honorable Peggy Kuo
March 28, 2021
Page 7

request, composed within the same week as the problematic filing, does not constitute a waiver of the Protective Order or excuse non-compliance in the first instance.

Under the Protective Order, plaintiff was obligated to object in writing to the designation, attempt to resolve the dispute with counsel, and seek court intervention if no resolution is reached. (ECF No. 50, ¶ 6). Notwithstanding defense counsel's missed response, plaintiff was not entitled to go forward without following the Court's order. In addition, though there was a dispute, the Protective Order required plaintiff to treat the material as confidential until it the dispute was resolved. (Id.). Plaintiff did not comply with any of these provisions in submitting his March 22, 2021 letter.

Plaintiff also failed to comply with the requirement to ask permission to file the papers under seal. Under the Protective Order, plaintiff was required to confer with defense counsel to make a joint application for the papers to be filed under seal. (ECF No. 50, ¶ 7). Instead, plaintiff proceeded to file his letter with material designated confidential. It is also questionable why the contents of the documents were needed for plaintiff's application, as the parties were in agreement that the late production needed further consideration and plaintiff made his application on consent. Thus, plaintiff has no excuse or justification for his rush to file his letter without complying with the Court's Protective Order. Based on the terms of the order, plaintiff mere opposition to this request is itself a violation of its terms.

Based on the foregoing, plaintiff's application should be denied, and the March 22, 2021 letter at Docket Entry Number 307 should be sealed.

**Plaintiff's response to Defendant's cross-motion to seal**

Defendants contend that Plaintiff's letter of March 22 should be sealed, primarily because it reveals the content of the Brown memorandum and some information about Mr. Ryan's response (although not the name of the ADA or the case in question). But the protective order, as we've shown, does not extend to the contents of these documents, and Defendants waived any objection.

First, just because, from time to time, Mr. Ryan placed in personnel files notes from DA Brown about individual prosecutors does not mean that this memorandum was a disciplinary or personnel document. It doesn't follow that because *some* notes Mr. Brown wrote were intended to be placed in a personnel file, *all* notes he wrote to Mr. Ryan were of such a nature. This was not a note critiquing any individual prosecutor, but rather a request to Mr. Ryan to discuss the DA's Office's historical practices. If Defendants wished to cloak with confidentiality every document authored by DA Brown having to do with prosecutorial practices, they should have asked the Court in its order to define such documents as confidential, but they did not, and for good reason: there is no good reason to treat such documents in such a way, barring public access to them.

# Law Offices of Joel B. Rudin, P.C.

Honorable Peggy Kuo
March 28, 2021
Page 8

      Second, Defendants are wrong that the deliberative-process privilege applies to the contents of this document, based upon their speculation that it might have been preliminary to a later discussion about further training. In any case, Defendants admit that they deliberately "opted to waive the privilege." Page 5, *supra*. So the privilege is irrelevant. Moreover, under Defendants' overly expansive view of this privilege, every document in the DA's Office's possession is confidential because of the potential that it influenced someone's thoughts or actions with regard to subsequent training. That speculative possibility doesn't convert a document that comments on the DA's Office's past practices into a "training" document.

      Third, Defendants fail to contradict Plaintiff's showing that they waived their current argument against disclosure of the document in question. Defendants do not dispute that they were put on notice of Plaintiff's intention to use the document and, despite writing several emails to Plaintiff's counsel, failed to object. Far from violating the protective order by discussing the document in his March 22 letter, Plaintiff's counsel complied with it by objecting in writing to Defendants' confidentiality designation and, encountering no "conflict"—which is what must occur before the filing-under-seal procedures kick in, *see* ECF No. 50 ¶¶ 6-7—rightly concluded that the designation had been abandoned.

      Strangely, Defendants claim that their acquiescence should be excused because they "understood plaintiff to want to file the documents as an exhibit to his letter." Page 6, *supra*. But if Defendants meant to consent to the filing of the entire document itself, they can hardly complain that we did *less* than they were consenting to. Indeed, if Defendants thought we had misunderstood their intention to consent to the document (including its contents) being filed, they would have objected on that basis in their letter that followed the filing, but they did not. *See* ECF No. 308. Simply because the news media views the contents of the Brown memorandum to be newsworthy, that doesn't entitle the City to now hide Plaintiff's entire letter from public view.

      Defendants' observation that thus far Plaintiff has not formally objected to confidentiality designations concerning other documents has nothing to do with this document, the designation of which we objected to the day we received it. Plaintiff has focused on finishing discovery so the case can be moved to trial, but this should not be mistaken for approval of the City's expansive view of confidentiality. We reserve the right to challenge other confidentiality designations in the future, as the confidentiality stipulation entitles us to do, but this is neither here nor there with respect to this document.

      Defendants claim that, even if the protective order doesn't apply here (which it doesn't), there is good cause for preventing disclosure of the document. They contend that the release of this document "would permit a skewed public discourse" and thus "deprive[] the City of a fair trial." Page 6, *supra*. This is way overblown. Recent media coverage of intentional suppression of exculpatory evidence in a death penalty case, causing three innocent defendants to lose more than 20 years of their lives, and of other recent Queens exonerations based upon *Brady* violations, is far more prejudicial than the Brown document, as revealing as it too is. Anyway,

# LAW OFFICES OF JOEL B. RUDIN, P.C.

Honorable Peggy Kuo
March 28, 2021
Page 9

"'alternative remedies' other than barring release of pretrial documents 'exist to ensure that the defendants receive a fair trial, [including] a more searching *voir dire*" of potential jurors. *In re Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 4522778, at *5 (quoting *United States v. Graham*, 257 F.3d 143, 154 (2d Cir. 2001)). And courts have repeatedly recognized that "publicity is unlikely to color incurably jurors' views, even in the most high-profile cases." *Id.* (quoting *Condit*, 225 F.R.D. at 118; and citing *In re NBC, Inc.*, 635 F.2d 945, 948 (2d Cir. 1980)).[6]

Defendants argue that the document and its contents should be hidden from the public because this discovery material it is not a "judicial document" under *Amodeo*. But the cases we rely on above acknowledge that discovery documents, even if not "judicial documents" within the meaning of *Amodeo*, still should be disclosed absent good cause under Rule 26(c). *See Padberg*, 2005 WL 5190385, at *2 (finding that the Giuliani deposition enjoyed only a "weak" "presumption of access," if any, under the *Amodeo* doctrine but that, nevertheless, "public access [wa]s warranted" on that "matter of public interest"); *In re Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 4522778, at *3 ("just because the public is not presumed to have access to pretrial discovery materials [as it is to 'judicial documents'], it does not follow that parties should be—or are—*barred* from sharing them publicly" (emphasis in original)). Defendants' discussion of *Amodeo* is thus beside the point.

Finally, Defendants criticize Plaintiff for discussing the contents of the document in his March 22 letter to the Court given that "plaintiff made his application on consent." Page 7, *supra*. However, the Court had previously set two deadlines for certifying the completion of discovery and had been pushing for that end for a long time. Plaintiff needed to explain to the Court the significance of this document, and the circumstances of its last-minute disclosure, to demonstrate the need for a further delay and that this delay was not of Plaintiff's making. That the City failed to disclose this critical document during more than *15 years* of *Monell* litigation, when the document was in the personal possession of the Chief ADA, who then continued to withhold it as the Acting District Attorney in a lawsuit involving suppression of evidence, is deeply troubling. For the City's reaction to be to try to hide this information from the public is more troubling still. Defendants' cross-motion should be denied.

Respectfully submitted,

/s/

Joel B. Rudin

cc:    All counsel (by ECF)

---

[6] Defendants argue that because so much background information related to this document is "already in the public realm," there is little public interest in disclosure of the document. Page 6, *supra*. Then why are Defendants so concerned that allowing the contents of the Brown memorandum to remain in the public domain will qualitatively affect their right to a fair trial? The logic of this view is not apparent.